Filed 11/6/14  Iovine v. Kurwa CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| NORMA M. IOVINE, | B248906 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC436952) |
| v. | |
| BADRUDIN KURWA, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Donna F. Goldstein, Judge.  Affirmed.

Hillel Chodos and Gina M. Putkoski Chodos for Plaintiff and Appellant.

Bonne, Bridges, Mueller, O'Keefe & Nichols, Gregory D. Werre and Vangi M. Johnson for Defendant and Respondent.

_____

**INTRODUCTION**

In this professional negligence action, plaintiff seeks reversal of a judgment in favor of defendant on grounds that the trial court erred by excluding evidence of defendant's misconduct 17 years before trial which resulted in discipline by the California Medical Board; by refusing to instruct the jury on the doctrine of res ipsa loquitur; and by denying her motion to amend her complaint during trial to add an additional claim for special damages.

We find no reversible error, and affirm.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

*A. Factual Background.*

Norma Iovine (appellant or plaintiff) began treating with ophthalmologist Badrudin Kurwa, M.D. (respondent or defendant) in 2003. She had a medical history that included glaucoma in her left eye, which had been surgically treated. She had also undergone cataract surgery with implantation of an intraocular lens in the left eye prior to her first visit with defendant. Over the next five years, defendant observed progression of a cataract in plaintiff's right eye. Eventually, she required a cataract extraction and implantation of an intraocular lens in that eye. Known risks associated with cataract surgery include dislocation of the implanted intraocular lens (subluxation) and myopic surprise.[1]

Surgery took place on January 16, 2008. The cloudy natural lens was removed from its capsular bag in the right eye, and replaced with a new intraocular lens. Defendant testified at trial that he could not recall the specifics of plaintiff's surgery or her post-operative visits. But he also testified that if there had been a capsular tear during the surgery his custom would have been to document that fact in his operative report. The operative note describes no untoward surgical events. Defendant testified that if there had been a complication observed post-operatively – for example, abnormal

---

[1]     Myopic surprise occurs when the power of the new intraocular lens unexpectedly causes nearsightedness.

2

movement or "subluxation" of the new lens – he would have noted it in his office chart. Since there were no such notes in his office chart, he testified that these complications did not occur during the time he took care of the plaintiff.

Over the ensuing months, plaintiff's vision in her right eye was poor. There is a conflict in the testimony regarding what defendant told plaintiff in that regard, and whether or not he prescribed eyeglasses for her. Ultimately, plaintiff went to another ophthalmologist, Andrew Phillips M.D., in October 2008. Dr. Phillips found that the implanted intraocular lens in the right eye had subluxed inferiorly and that the capsule surrounding the new lens was torn. Dr. Phillips proceeded with reparative surgery to reposition the intraocular lens, which took place on November 10, 2008. There was conflicting testimony at trial regarding the residual visual deficits in plaintiff's right eye, and the extent to which she suffered disability because of it.

*B. Procedural History and Trial*:

On May 3, 2010, plaintiff filed her complaint which included a single cause of action for medical malpractice. She alleged that defendant had negligently removed her cataract and inserted an artificial lens, which slipped out of place and required subsequent surgery, leaving her with residual visual deficits. On August 26, 2011, defendant filed a motion in limine to exclude evidence of other lawsuits, claims or medical board proceedings, pursuant to Evidence Code sections 787, 788 and 1101.[2] Plaintiff opposed the motion on the grounds there had been a California Medical Board (the Board) action regarding conduct of the defendant in the early to mid-1990's relating to improper Medicare billing, which included findings that he had altered his patients' medical records. The Board had suspended defendant from the practice of medicine for two months and placed him on five years of probation. In his reply, defendant reiterated his arguments regarding sections 787, 788, and 1101, and added that "pursuant to Evidence Code section 352, the prejudicial effect and remoteness in time of the conduct in question (1990 – 1995) far outweigh any probative value."

---

[2] All further statutory references are to the Evidence Code unless otherwise specified.

3

The trial court granted defendant's motion in limine, ruling that the Board action was inadmissible character evidence under section 1101, subdivision (a), and that there was no felony conviction exception, pursuant to section 788. Plaintiff raised the issue again during trial, seeking to present evidence of defendant's prior discipline for misconduct relating to record alteration. The court again ruled that sections 1101, 787 and 788 precluded the admission of such evidence.

At trial, plaintiff's expert, Dr. Donzis, was not critical of defendant's operative technique and did not opine that he fell below the standard of care during the cataract surgery. He also testified that a tear of the capsule may occur due to negligence, but it may also occur in the absence of negligence. Dr. Donzis's primary criticism of the care provided by defendant was his apparent failure postoperatively to discuss with his patient the cause of her complications, the finding of myopic surprise, and the treatment options available (e.g., prescription eyeglasses, and if unsuccessful, lens exchange surgery).

Defendant's expert, Dr. Fuerst, testified that there was no evidence plaintiff had a clinically significant subluxation while she was treating with the defendant. He opined that defendant complied with the standard of care in terms of diagnosis and treatment of myopic surprise. Like Dr. Donzis, Dr. Fuerst also testified that subluxation could result from negligence, or could occur in the absence of negligence. He based his opinions on the entries in defendant's chart, which he believed was reliable.

On several occasions during trial, plaintiff requested that the court instruct the jury on the doctrine of res ipsa loquitur (although she never formally submitted a written request for such an instruction).[3] The court denied plaintiff's requests and the instruction was not given.

As the trial progressed, plaintiff sought to amend her complaint in order to add a claim for special damages relating to caregiver services, which she alleged were necessary due to her disability from residual visual deficits. In light of plaintiff's delay in

---

[3] Prior to trial, the parties filed their joint jury instruction list. Plaintiff did not submit a res ipsa loquitur instruction.

4

bringing her motion to amend, and the fact that these issues were neither explored during discovery nor proven at trial, the court denied her motion.  It did allow her to discuss her attendant needs as an element of general damages, but not to introduce specific dollar amounts to add as special damages.

After five days of trial, the jury began deliberations.  Shortly thereafter, on April 19, 2013, they returned with a verdict in favor of the defendant by a vote of 12 to 0, finding that the medical care and treatment by defendant was within the applicable standard of care.  In light of its finding on standard of care, the jury did not reach the issues of causation or damages.

Plaintiff filed a timely appeal contending that the trial court erred by excluding the Board's findings of defendant's prior misconduct; by refusing to give a res ipsa loquitur instruction; and by denying her motion for leave to amend her complaint to add additional special damages relating to the cost of caregivers.[4]

We summarize the standard of review to be applied, then address each issue raised on appeal.[5]

---

[4]     On appeal, plaintiff has requested that we take judicial notice of a complaint filed in federal court against defendant on or about November 1, 1996, along with attached settlement agreements and a dismissal made part of the federal court record (attached to plaintiff's request as exhibits A and B).  We take judicial notice of these documents as records of a court of record of the United States, pursuant to sections 459, subdivision (a) and 452, subdivision (d).  However, we do not take judicial notice of the truth of the factual matters contained in those documents.  (*People v. Castillo* (2010) 49 Cal.4th 145, 157.)  We decline to take judicial notice of the newspaper article attached to plaintiff's request as exhibit C.  Defendant has filed "objections" to documents in the plaintiff's appendix, as well as statements in her brief unsupported by citations to the record.  Those matters were not of substantial consequence to the determination of the action nor are they necessary to the resolution of this appeal.  (See, e.g., § 459, subd. (c); *Health First v. March Joint Powers Authority* (2009) 174 Cal.App.4th 1135, 1137.)  Therefore, we decline to address them.

[5]     At oral argument, questions were raised as to whether the trial court based its evidentiary ruling regarding the admissibility of defendant's prior acts, at least in part, on section 352; and, if so, whether it abused its discretion in doing so.  The parties each filed supplemental briefs on this issue.

## STANDARD OF REVIEW

As to a trial court's rulings on the admissibility of evidence, we employ an abuse of discretion standard of review. (*Pannu v. Land Rover North America, Inc.* (2011) 191 Cal.App.4th 1298, 1317; *People v. Zavala* (2013) 216 Cal.App.4th 242, 249.) This standard applies to its rulings on the relevance of proffered evidence (*Shaw v. County of Santa Cruz* (2008) 170 Cal.App.4th 229, 281 (*Shaw*), as well as its discretionary exclusion of evidence. (*Boeken v. Philip Morris, Inc.* (2005) 127 Cal.App.4th 1640, 1685 (*Boeken*).) We also employ an abuse of discretion standard when reviewing the denial of leave to amend plaintiff's complaint. (*Consolidated World Investments, Inc. v. Lido Preferred Ltd.* (1992) 9 Cal.App.4th 373, 383.)

Regarding jury instructions, a party in a civil case is "entitled to have the jury instructed as to its theory of the case provided (1) that it requests and submits legally correct instructions, and (2) that there is sufficient evidence to support the theory." (*Cumbre, Inc. v. State Comp. Ins. Fund* (2010) 189 Cal.App.4th 1381, 1387 (*Cumbre*).) When it is argued that a jury has been erroneously instructed, we examine all the circumstances of the case, including an assessment of all the evidence (*Krouse v. Graham* (1977) 19 Cal.3d 59, 72), and then review the court's alleged error de novo. (*Cumbre, supra,* 189 Cal.App.4th at p. 1388.) " ' " ' "A reviewing court must review the evidence [in the light] most favorable to the contention that the requested instruction is applicable since the parties are entitled to an instruction thereon if the evidence so viewed could establish the elements of the theory presented . . ." [Citation.]' " [Citation.]' " (*DeWitt v. Monterey Ins. Co.* (2012) 204 Cal.App.4th 233, 240.)

Nevertheless, reversal is not warranted for an error in jury instructions unless there is a reasonable possibility that, in the absence of the error, a result more favorable to the appealing party would have been reached. (*Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 572 (*Soule*); *Bolen v. Woo* (1979) 96 Cal.App.3d 944, 951.) Thus, a judgment in a civil case may not be reversed on the basis of instructional error unless the court " ' "shall be of the opinion that the error complained of has resulted in a

6

miscarriage of justice.'  (Cal. Const., art. VI, § 13.)'  [Citation.]"  (*Collins v. Navistar, Inc.* (2013) 214 Cal.App.4th 1486, 1510.)

## DISCUSSION

I.    **Exclusion of Evidence of Defendant's Prior Medical Board Discipline Relating to Falsification of Medical Records**

*A.  Admissibility of Defendant's Discipline by the Medical Board to impeach his credibility or to prove his conduct on a specified occasion.*

Plaintiff proffered evidence at trial that the defendant had been formally disciplined by the Medical Board for altering his medical records in a case involving third party billing procedures.  While the Board's action was affirmed by the superior court in approximately 2003, the conduct upon which the action was based occurred between 1990 and 1995 – 18 to 23 years before trial.  Plaintiff claimed the history of record alteration was relevant to defendant's credibility, and also to the accuracy and reliability of the medical records that defendant used at trial to assist him in describing his care of the plaintiff, which formed the bases of the opinions of various expert witnesses.

Defendant's primary arguments in opposition to the admissibility of his prior conduct were based upon section 1101, as well as sections 787 and 788.  Section 1101 precludes the use of a person's character or a trait of his character, as evidenced by prior conduct, to prove his or her conduct on a specific occasion.  (§ 1101, subd. (a); *Bender v. County of Los Angeles* (2013) 217 Cal.App.4th 968, 983 (*Bender*).)  As to credibility, in civil cases evidence of specific instances of a witness's conduct relevant "only as tending to prove a trait of his character is inadmissible to attack or support the credibility of a witness" (§ 787) -- unless he or she has been convicted of a felony (§ 788).  Section 787 was nullified in criminal cases in 1982 by Proposition 8 (Cal. Const., art. I, § 28, subd. (d), now § 28, subd. (f)(2)), allowing prior conduct that did not result in a felony conviction to nevertheless be admitted to impeach credibility in those cases.[6]  (*People v.*

---

**6**    However, even in criminal cases the trial court retains discretion to exclude such evidence where its probative value is substantially outweighed by its potential for prejudice, confusion, or undue consumption of time pursuant to section 352.

*Wheeler* (1992) 4 Cal.4th 284, 290-296 (*Wheeler*).)  In civil cases, the rule remains that particular wrongful acts or instances of untruthfulness cannot be used to prove bad character of the witness for honesty or veracity (§ 787; *Hernandez v. Paicius* (2003) 109 Cal.App.4th 452, 460), except where there has been a felony conviction.  (§ 788.)

Plaintiff countered that section 1101, subdivision (a) does not affect the admissibility of evidence offered to attack a witness's credibility, as expressly stated in section 1101, subdivision (c).  (See, *Bender, supra*, 217 Cal.App.4th at p. 983.)  She also argued that the evidence was nevertheless admissible under section 1101, subdivision (b) because it tended to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.  Moreover, plaintiff claimed that the evidence impeached defendant's testimony at trial, where he stated that based upon his usual custom and habit of record keeping, his chart reflected what occurred (or did not occur) during his care of the plaintiff.

The trial court ruled that the evidence of Board discipline for past misconduct was inadmissible character evidence offered to prove defendant's conduct on a specified occasion under section 1101, subdivision (a).  (*Bender, supra*, at p. 983.)  The court also concluded that the past misconduct was not relevant to any motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident, thus precluding its admissibility under section 1101, subdivision (b).  In addition, the court held that since the prior misconduct did not lead to a felony conviction, it was inadmissible to prove a trait of character with which to attack defendant's credibility under sections 787 and 788.

We find no reversible error in these rulings.  However, as we discuss below, just because a felony conviction is admissible character evidence with which to attack a witness's credibility, it does not follow that evidence of misconduct is always inadmissible *unless* there has been a felony conviction.

*B. Admissibility of Defendant's Discipline by the Board for purposes other than to impeach his credibility or to prove his conduct on a specified occasion.*

Plaintiff's evidence of Board discipline was not only proffered to challenge defendant's general credibility as a witness or to prove his conduct on a specific

occasion. It was also submitted to prove the "existence or nonexistence of a[] fact testified to by him." (§ 780, subd. (i).) Defendant testified at trial that he could not recall the specifics of plaintiff's surgery or her postoperative care. He went on to testify that despite his lack of recall, he could testify as to what happened during the surgery -- e.g., that no tear in the capsule occurred -- because his practice was to document such tears in his operative reports. Since there was no tear documented, and since he followed his custom and practice of recordkeeping, there was no tear during the surgery.

Likewise, defendant testified that there was no subluxation of the patient's lens postoperatively. Even though he had no recall of her examination, if subluxation had occurred he would have seen it and, pursuant to his usual practice, would have made note of it in his patient's chart. The clear implication was that one could infer the existence or nonexistence of certain facts based on the information in his record. Various experts based their opinions on these records in reaching their conclusions.

There is nothing wrong, of course, with a doctor relying on his or her records when testifying about what occurred during a patient's care. Certainly, physicians cannot be expected to recall the details of every event or circumstance that occurs with every patient. But where a defendant bases his testimony about what occurred in a given case on his custom and practice of record-keeping, a plaintiff should be allowed to challenge the reliability of those records -- if it can be done with admissible evidence.[7]

As noted above, "the court or jury may consider in determining the credibility of a witness any matter that has any tendency in reason to prove or disprove the truthfulness of his testimony at the hearing, including but not limited to . . . [t]he existence or nonexistence of any fact testified to by him." (§ 780, subd. (i).) In this case, plaintiff

---

[7]     Plaintiff contends that the Board discipline reveals a "habit" of altering records, and is thus admissible under section 1105 to show his conduct in this case was in conformity with that habit. However, "[i]mproper character evidence does not become admissible simply by citing to section 1105 and claiming actions in accordance with a custom or habit." (*Bowen v. Ryan* (2008) 163 Cal.App.4th 916, 926.) Moreover, there was no evidence presented that defendant engaged in any record alteration or similar misconduct since 1996. One could hardly say this demonstrated a habit of record alteration 22 years later.

herself testified that the medical records inaccurately reflected actual events. In addition, she claimed defendant misled her about complications following her surgery and failed to accurately document in his records what actually occurred (for example, whether a prescription for eyeglasses was given to her). Arguably, the Board action corroborated this testimony and tended to disprove defendant's testimony at trial.

The fact that defendant's prior conduct did not lead to a felony conviction does not preclude admission of such evidence. Section 787's limit on the use of past instances of conduct to prove a trait of character undermining credibility does not apply where evidence is offered to prove a witness testified falsely on his or her direct examination. (*Leader v. State of California* (1986) 182 Cal.App.3d 1079, 1091 [plaintiff's misdemeanor convictions were admissible in his civil action to prove nonexistence of facts testified to by him].)

Here, the Board action was not offered solely to show that the defendant had a defective character trait, or that he acted in a certain way on a specified occasion. It was also offered to prove he testified falsely at trial regarding a material fact.[8] Simply put, if a witness testifies that he has a custom and habit of accurately documenting his records, evidence that he had a history of improperly altering his records would be relevant to undermine that testimony, without running afoul of either sections 787 or 1101, subdivision (a). To the extent that the trial court excluded the evidence based upon those code sections, its reliance on them was misplaced and its reasoning erroneous.

However, section 352 would still apply. If the court concluded that the probative value of the prior conduct was substantially outweighed by the probability that its admission would (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury, it could still find the evidence inadmissible. (§ 352.)

---

[8]     In his supplemental reply brief, defendant argues that he never testified that it was his "habit and custom to keep and maintain accurate records." But he did testify he could relate what had occurred with the plaintiff, despite his lack of recall, by relying on his practice in keeping his medical records.

*C. Excluding the Evidence of Prior Discipline was within the Trial Court's Discretion pursuant to Section 352:*

A complete review of the record here reveals that sections 787, 788 and 1101(a) were not the trial court's only considerations when it assessed the evidence of defendant's prior Board discipline. Where potentially inflammatory evidence reflecting prior misconduct is offered, courts are frequently called upon to apply section 352. Nothing in sections 787, 788 or 1101(a) exempts such evidence from the general rule of that code section. (See, e.g., *Wheeler, supra*, 4 Cal.4th at pp. 295-296; *People v. Beagle* (1972) 6 Cal.3d 441, 452-453.) Even evidence of prior felony convictions may be properly excluded in the court's discretion after it balances the section 352 factors. (*Boeken, supra*, 127 Cal.App.4th at p. 1685.) Certainly, then, evidence of conduct not resulting in a felony conviction -- as we have here -- can be excluded under section 352 after a proper exercise of judicial discretion.

In *People v. Pearson* (2013) 56 Cal.4th 393 (*Pearson*), our Supreme Court explained the key role section 352 plays in the context of prior conduct that falls short of a felony conviction. *Pearson* involved a criminal trial where a prosecution rebuttal witness had been charged with MediCal fraud decades earlier, but there had been no conviction. Like plaintiff's counsel here, the defense attorney attempted to cross-examine the witness regarding his prior conduct surrounding the fraud charges. The trial court disallowed the cross-examination under section 352, concluding that it would " 'consume too much time' " and " ' "divert[] the jury" from its primary purpose . . ." (*Pearson, supra*, at p. 454.) The Supreme Court upheld the trial court's ruling, stating " ' "[I]mpeachment evidence other than felony convictions entails problems of proof, unfair surprise, and moral turpitude evaluation which felony convictions do not present. Hence, courts may and should consider with particular care whether the admission of such evidence might involve undue time, confusion, or prejudice which outweighs its probative value." ' " (*Ibid.*, citing *Wheeler, supra*, at pp. 296-297.) The trial court here had discretion to exclude evidence of defendant's prior Board discipline under section 352.

11

Nevertheless, before a reviewing court can uphold a ruling on the admissibility of evidence under section 352, it must first appear that the trial court actually exercised its discretion. If the record reveals it did not, the matter will be reversed and remanded so that the required discretion can be exercised. (*Fletcher v. Superior Court* (2002) 100 Cal.App.4th 386, 392.) Put another way, while we review evidentiary rulings for an abuse of discretion, there must first be an exercise of discretion to review. After all, a trial court's failure to exercise its discretion may "itself [be] an abuse of discretion." (*In re Marriage of Gray* (2007) 155 Cal.App.4th 504, 515; see, *Gardner v. Superior Court* (1986) 182 Cal.App.3d 335.)

A court must engage in the weighing process required by statute, balancing the evidence's probative value against the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury. At trial, the court and counsel spent considerable time discussing whether the Board action was admissible under sections 787, 788 and 1101.[9] But it is clear from the discussion that the court also considered both its probative value and the risk of undue prejudice. As far as probative value, it repeatedly mentioned that the conduct in question occurred over 17 years before trial. It recognized the problem of assessing what defendant did in the present case based upon something he did so long ago, stating, "That's so prohibited." In *People v. Pitts* (1990) 223 Cal.App.3d 1547, 1554, a trial court ruled that past crimes could not be used for impeachment if they were more than 10 years old. The Court of Appeal held that this

---

[9]     Considerations similar to those in section 352 underlie the exclusion of character evidence pursuant to section 1101. As stated in the Law Revision Commission Comments following that section, such evidence is excluded because: (1) Character evidence is of slight probative value and may be very prejudicial; (2) character evidence tends to distract the trier of fact from the main question of what actually happened on the particular occasion and permits the trier of fact to reward the good man and punish the bad man because of their respective characters; and, (3) introduction of character evidence may result in confusion of issues and require extended collateral inquiry.

presumptive standard of remoteness was a proper exercise of discretion under section 352.[10]

The trial court also discussed the undue prejudice that would occur with admission of the Board action. Expressly citing section 352, it concluded that the evidence would be "so significant to a jury that it would cause Dr. Kurwa to lose . . . whether there's evidence of malpractice or not." The court believed that the parties "might as well go home" if she allowed the evidence, because "it's a game changer." In assessing the various factors, the court mentioned that plaintiff had other opportunities to demonstrate that the records were falsified, without resorting to the Board action and that, ultimately, "this case has to stand on its own."

From these comments, it is apparent that the court considered the probative value of the evidence and the undue prejudice that would arise from its admission. It was concerned about the risk that the jury would decide the case on factors unrelated to what actually happened in this case. The "prejudice" referred to in section 352 is not synonymous with "damaging," but rather applies to evidence that "uniquely tends to evoke an emotional bias against the defendant as an individual and which has very little effect on the issues." (*People v. Gionis* (1995) 9 Cal.4th 1196, italics and internal quotations omitted.) The court's concern in that regard is precisely the concern section 352 is designed to address.[11]

---

[10] It is worth noting that the Federal Rules of Evidence provide that a conviction more than 10 years old is admissible for impeachment purposes "only if . . . its probative value . . . substantially outweighs its prejudicial effect." (Fed. Rules Evid., rule 609(b).)

[11] The record reveals that multiple administrative and judicial proceedings took place over a prolonged period in the underlying Board action. The specific nature of the record alteration had to do with improper billing procedures, not (as here) allegations of professional negligence leading to patient injury. It is unlikely that a busy trial judge would fail to recognize the risk of undue consumption of time and the possibility of confusing or misleading the jury that could result from the admission of this evidence.

13

While the record is not as clear as we would like, a trial court need not "recite the magic words that its decision was based on '352' nor . . . intone that the probative value of the evidence, if admitted, was not outweighed by creating substantial danger of undue prejudice or comments of similar import." (*People v. Boyd* (1985) 167 Cal.App.3d 36, 45 (*Boyd*).) It "'need not make findings or expressly recite its weighing process, or even expressly recite that it has weighed the factors, so long as the record as a whole shows the court understood and undertook its obligation to perform its weighing function. [Citations.]" (*Boeken, supra*, at p. 1685.) "The important point is . . . that the court made apparent on the record that prior to exercising its discretion it did, in fact, weigh prejudice against probative value . . ." (*Boyd, supra*, 167 Cal.App.3d at p. 45; *People v. Navarez* (1985) 169 Cal.App.3d 936, 950.) While "[n]o doubt it [is] better practice for a trial judge to make a clear record of its weighing process[,]" (*People v. Clarida* (1987) 197 Cal.App.3d 547, 553), an express statement of section 352 factors and an assessment of them is not absolutely necessary where the "content and context of the argument that precede[s] the court's ruling, and the entire nature of the ruling itself, adequately demonstrates a reflection and weighing of Evidence Code section 352 factors." (*People v. Johnson* (1987) 193 Cal.App.3d 1570, 1576-1577.)

The purpose of the trial court making an affirmative showing of how it exercised its discretion is to " 'furnish the appellate courts with the record necessary for meaningful review of any ensuing claim of abuse of discretion' " and " 'to ensure that the ruling [is] . . . "the product of a mature and careful reflection on the part of the judge." ' " (*People v. Montiel* (1985) 39 Cal.3d 910, 924.) Given an adequate record, an exercise of discretion under section 352 "will be disturbed on appeal only if the trial court exercised it in an arbitrary, capricious, or patently absurd manner resulting in a manifest miscarriage of justice." (*Boeken, supra*, at p. 1685.) In this case, the trial court certainly could have made a record that better reflected its analysis and weighing process. But we can nevertheless recognize that it considered the applicable factors under section 352.

14

Once the trial court exercises its discretion, we do not substitute our own independent judgment and rebalance the factors anew. Rather, we determine if its discretion was abused. While the discretion of a trial judge is subject to the limitations of legal principles governing the subject of its action, and is subject to reversal on appeal where no basis for the action is shown, abuse of discretion has been described as something that is " 'so irrational or arbitrary that no reasonable person could agree with it.' " (*Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 773 (*Sargon*).) When it comes to appellate review of evidentiary rulings, discretion is abused "only when in its exercise, the trial court 'exceeds the bounds of reason, all of the circumstances before it being considered.'" (*Shaw, supra*, 170 Cal.App.4th at p. 281.) It is the appellant's burden to establish that there has been a "clear case of abuse and [a] miscarriage of justice . . ." (*Ibid*.)

Here, excluding evidence of misconduct committed almost twenty years earlier under different circumstances, with no indication that such conduct had been repeated since that time, while recognizing that such evidence was likely to create a substantial risk that the jury would base its verdict on something other than the main question of what actually occurred during plaintiff's medical care, cannot be seen as so irrational or arbitrary that no reasonable person could agree with it. This is the very type of evidence section 352 addresses, leaving its admissibility to the sound discretion of the trial court. We find no indication that the court's discretion was abused here. Its exercise was reasonable under the circumstances, and its ruling will not be disturbed on appeal.

## II.     The Trial Court's Refusal to Instruct the Jury on Res Ipsa Loquitur:

### A. *Plaintiff's Failure to Formally Request a Res Ipsa Loquitur Instruction.*

Plaintiff argues that the court had a duty to instruct the jury on the doctrine of res ipsa loquitur, even though she did not specifically or expressly request such an instruction. In general, "[a] party is entitled upon request to correct, nonargumentative instructions on every theory of the case advanced by him which is supported by substantial evidence." (*Soule, supra,* 8 Cal.4th at p. 572.) Here, plaintiff argues that the evidence supported a res ipsa loquitur instruction because defendant was in sole control

15

of the instrumentality; subluxation can result either from or in the absence of negligence; and it was a rare complication occurring in less than 1 percent of surgeries. Although plaintiff raised the issue of res ipsa loquitur during trial on multiple occasions, she concedes that she never submitted a formal, written instruction to the court for presentation to the jury.

In civil jury trials it is the duty of counsel, prior to the commencement of trial and thereafter where applicable, to present written jury instructions to the court. (Code Civ. Proc., § 607a.) The California Rules of Court provide that "all proposed [Jury] instructions must be submitted to the court in the form and format prescribed for papers in the rules . . . of this title." (Cal. Rules of Court, rule 2.1055(b).) The rule goes on to provide for specific form and substance requirements for each written jury instruction. In addition, the local rules of the Los Angeles Superior Court anticipate the presentation of written instructions to the court by counsel that conform to the California Rules of Court, and also provide for a jury instruction conference before final argument in order to review the proposed instructions. (Super. Ct. L.A. County, Local Rules, rule 3.170, et seq.) Plaintiff contends that given the discussions with the court regarding the doctrine of res ipsa loquitur during trial, it "would have been unavailing" to formally request such an instruction in writing. Because such a request would have been an act of futility, she asserts, an exception to the aforementioned rules is called for.

Whether submitting a written jury instruction to the court regarding res ipsa loquitur would have been unavailing under the circumstances is a moot point here because, as discussed below, there was no basis for a res ipsa loquitur instruction in any event.

B. *The Nature of the Res Ipsa Loquitur Doctrine.*

Res ipsa loquitur is a doctrine affecting the burden of producing evidence applicable to certain kinds of accidents that are so likely to have been caused by a defendant's negligence that, in the Latin equivalent, " ' "the thing speaks for itself." ' " (*Scott v. Rayhrer* (2010) 185 Cal.App.4th 1535, 1540 (*Scott*).) If applicable, the doctrine "establishes a presumption of negligence requiring the defendant to come forward with

16

evidence to disprove it." (*Baumgardner v. Yusuf* (2006) 144 Cal.App.4th 1381, 1389.) The basis of the doctrine rests on a " 'theory of "probability" where there is no direct evidence of defendant's conduct, [citations], permitting a common sense inference of negligence from the happening of the accident.' " (*Scott, supra*, 185 Cal.App.4th at p. 1540.)

It is plaintiff's burden to present " 'some substantial evidence which, if believed by the jury, would entitle it to draw an inference of negligence from the happening of the accident itself.' [Citation.]." (*Blackwell v. Hurst* (1996) 46 Cal.App.4th 939, 944.) Therefore, for plaintiff to be entitled to a res ipsa loquitur instruction, she must present evidence that her harm "ordinarily would not have happened unless someone was negligent." (CACI No. 417.)

*C. There was no evidence presented at trial supporting the application of the Res Ipsa Loquitur Doctrine:*

Plaintiff points out, correctly, that experts from both sides testified that subluxation of the lens as a result of cataract surgery could occur either in the presence or absence of negligence. She is incorrect, however, in her assertion that it was the prerogative of the jury to determine if there was negligence, in the absence of expert testimony to that effect. It has long been the law that, unless a physician's conduct in the particular circumstances was within the common knowledge of laymen, the standard of care against which his or her acts are measured is a matter "peculiarly within the knowledge of experts" and can only be proven by their testimony. (*Alef v. Alta Bates Hospital* (1992) 5 Cal.App.4th 208, 215; CACI No. 501.) In this case, the experts testified that lens subluxation injuries such as plaintiff's can occur due to negligence in some cases, and in the absence of negligence in others. No expert opined that negligence was the cause of the injury here, or that plaintiff's injury was of the type that ordinarily would not have happened unless someone was negligent.

Before a jury can be instructed on any theory, there must be sufficient evidence presented at trial to support it. (*Cumbre, supra,* 189 Cal.App.4th at p. 1387.) For the jury to decide the threshold question under res ipsa loquitur, it must first receive evidence that the nature of plaintiff's injury was such that it ordinarily would not have occurred in the absence of negligence.[12] The record is devoid of any such evidence.

As our Supreme Court explained long ago, "since the res ipsa loquitur instruction permits the jury to infer negligence from the happening of the accident alone, there must be a basis either in common experience or expert testimony that when such accident occurs, it is more probably than not the result of negligence." (*Tomei v. Henning* (1967) 67 Cal.2d 319, 322.) Where, as here, the nature of cataract surgery and its potential complications is not a matter of common experience, "expert testimony is necessary to determine whether a probability of negligence appears from the happening of the accident." (*Ibid*.)

Plaintiff presented no expert testimony that she suffered the type of injury that ordinarily would not have happened unless someone was negligent. Thus, there was no evidence at trial that would support a res ipsa loquitur instruction. The trial court's refusal to give such an instruction, even if it had been properly requested in a timely fashion, was proper.

III. **The Trial Court did not Commit Error by Denying Plaintiff's Motion to Conform Her Pleadings to Conform to Proof, and the Ruling was Harmless in Any Event**

A. *There was no abuse of discretion in denying plaintiff's motion to amend her complaint to add a claim for special damages.*

Plaintiff argues that her motion to amend her complaint during trial in order to add a claim for special damages relating to caregiver services should have been granted.

---

[12] The CACI Instruction regarding Res ipsa loquitur requires the plaintiff to prove all of the following: (1) That the plaintiff's harm ordinarily would not have happened unless someone was negligent; (2) That the harm was caused by something that only the defendant controlled; and (3) that the plaintiff's voluntary actions did not cause or contribute to the event[s] that harmed her. (CACI No. 417.)

18

Plaintiff cites various cases for the proposition that amendments should be liberally allowed, even during trial or thereafter. Nevertheless, the trial court's decision in this regard rests in its sound discretion. (*Consolidated World Investments, Inc. v. Lido Preferred Ltd.*, *supra*, 9 Cal.App.4th at p. 383.)

In exercising its discretion to amend pleadings during trial, a court considers (1) whether facts or legal theories are being changed and (2) whether the opposing party will be prejudiced by the proposed amendment. (*City of Stanton v. Cox* (1989) 207 Cal.App.3d 1557, 1563.) Where, due to an unexcused delay, the facts raised by a proposed amendment have not been fully tried, the trial court may properly deny leave to amend. (*Id*. at p. 1564.) In the instant case, the trial court found no reasonable excuse for the delay in seeking leave to amend. Plaintiff claimed that she notified defendant a year prior to trial of her intent to claim attendant care expenses as special damages, to which the defendant objected. Yet no motion to amend was filed until a year later. The trial court also found that the defendant would be prejudiced by such an amendment in that no discovery had been conducted with regard to the issue, and no expert witnesses had been designated on the question of special damages as they related to caregiver services. There was a dispute during trial as to what was said between counsel, and when it was said, as regards evidence of special damages. The trial court was called upon to assess the facts and arguments from both sides. Its decision appears to have been reasonable under the circumstances. Certainly, it was not " 'so irrational or arbitrary that no reasonable person could agree with it' " (*Sargon, supra,* at p. 773) nor did it " 'exceed[] the bounds of reason.' " (*Shaw*, *supra*, 170 Cal.App.4th at p. 281.) Since the trial court did not abuse its discretion in denying plaintiff leave to amend, its ruling should not be disturbed on appeal.

B. *Even if the denial of leave to amend had been erroneous, it was harmless.*

In order for an error to be reversible, it must have caused prejudice to the complaining party. The California Constitution states: "No judgment shall be set aside, or new trial granted, in any cause, on the ground of . . . any error as to any matter of pleading, or for any error as to any matter of procedure, unless, after an examination of

19

the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice." (Cal. Const., art. VI, § 13.) This constitutional mandate is reflected in Code of Civil Procedure section 475, which states that "[n]o judgment, decision, or decree shall be reversed or affected by reason of any error, ruling, instruction, or defect, unless it shall appear from the record that such error, ruling, instruction, or defect was prejudicial, and also that by reason of such error, ruling, instruction, or defect, the said party complaining or appealing sustained and suffered substantial injury, and that a different result would have been probable if such error, ruling, instruction, or defect had not occurred or existed." Except in situations where error is considered reversible per se (which do not apply here), prejudice is not presumed, and the burden is on the appellant to affirmatively demonstrate prejudicial error. (*Pool v. City of Oakland* (1986) 42 Cal.3d 1051, 1069.)

Here, the jury reached a unanimous decision that there was no breach of the standard of care by the defendant. Thus, there was no determination on the issue of causation, let alone damages. Since the jury never reached the damages question, one cannot conclude that a different result would have been probable if the court had granted leave to amend on the question of special damages. Thus, there could have been no prejudice as a result. Put another way, the denial of leave to amend was moot once the jury determined there was no violation of the standard of care and rendered its defense verdict.[13] Thus, even if an error had occurred in denying leave to amend, it would have been harmless.

---

[13] Defendant raised the mootness issue in his Respondent's Brief. Plaintiff does not address the issue in her Reply Brief.

## DISPOSITION

For the reasons stated herein, the judgment of the trial court is affirmed. Defendant is awarded his costs on appeal.

KUSSMAN, J. [*]

We concur:

RUBIN, Acting P. J.

FLIER, J.

_____

[*]     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.