[No. B209160. Second Dist., Div. Six. June 1, 2010.]

WILLIAM SCOTT et al., as Personal Representatives, etc., Plaintiffs and Appellants, v.
CONSTANZE RAYHRER et al., Defendants and Respondents.

## COUNSEL

Law Offices of Malcolm R. Tator, Malcolm Tator; Lascher & Lascher, Wendy Lascher and Eric Reed for Plaintiffs and Appellants.

Randolph M. Even & Associates and David A. Arkuss for Defendant and Respondent Constanze Rayhrer.

Bonne Bridges Mueller O'Keefe & Nichols, Vangi M. Johnson; Engle Carobini Covner & Coats and Benjamin F. Coats for Defendant and Respondent Gosta Iwasiuk.

## OPINION

**PERREN, J.**—William Scott and Robert Scott, as personal representatives of Jay Scott,[1] appeal from a jury verdict in favor of respondents, Drs. Constanze Rayhrer and Gosta Iwasiuk, on Scott's claim for medical malpractice. A drain inserted after surgery was left in Scott's abdomen and not discovered and removed until 20 months later.

Scott contends that the trial court erred in denying his request for a res ipsa loquitur instruction as to Dr. Rayhrer, instructing the jury that a finding of res ipsa loquitur against Dr. Iwasiuk must be based on expert testimony, and refusing to instruct the jury that meeting the community standard of care does not excuse unreasonable conduct. We affirm.

### STATEMENT OF FACTS AND PROCEDURAL HISTORY

Scott had surgery for colorectal cancer in September 2002. Dr. Iwasiuk performed the surgery. Scott subsequently developed diarrhea and dehydration requiring hospitalizations in January and February 2003. Scott's symptoms continued and, on August 1, 2003, a CT scan of Scott's abdomen revealed fluid collection in the sacral hollow near the rectum. A drainage

---

[1] Appellants William and Robert Scott were substituted in on December 3, 2009, as personal representatives of their father Jay Scott due to his death. Further references to Scott are to the deceased Jay Scott.

catheter was placed to drain the fluid and removed a week later. On August 28, fluid collection was again seen on a CT scan. Scott continued to complain of pain related to reaccumulation of the fluid.

On September 9, 2003, while Dr. Iwasiuk was on vacation, Dr. Rayhrer placed two Penrose drains in the presacral space.[2] On September 18 and 19, Dr. Iwasiuk advanced the drains by pulling them partially out of the wound, trimming the protruding sections, and securing them with safety pins to prevent them from being pulled back into the wound. Dr. Iwasiuk removed the drains on September 22.

After the drains were thought to be removed, fluid continued to accumulate. Scott experienced increased diarrhea, fever, and fatigue. Dr. Iwasiuk continued to treat Scott. On Dr. Iwasiuk's orders, a fistulogram was performed on May 3, 2005. The fistulogram showed a tubular structure resembling a drain. Dr. Iwasiuk performed surgery and removed a seven-inch Penrose drain or a portion of the drain.

Scott filed a complaint for medical malpractice against Drs. Iwasiuk and Rayhrer, Pueblo Radiology Group and Santa Paula Hospital. He settled with Pueblo and the hospital and proceeded to trial against the two doctors.

Scott requested that the jury be instructed on the doctrine of res ipsa loquitur in his claims against both doctors. The court refused to give the instruction as to Dr. Rayhrer and gave the instruction as to Dr. Iwasiuk only. Over Scott's objection, the court instructed the jury that a finding of negligence could be based only on expert testimony. Scott contends that there was no need for expert testimony because the basis of his claim is within the common knowledge of the jury. The trial court declined to give CACI No. 413, as requested by Scott, that meeting the community standard of care does not excuse unreasonable conduct. The jury returned verdicts for defendants. Scott's appeal is limited to these alleged instructional errors.

## DISCUSSION

### Standard of Review

"A party is entitled upon request to correct, nonargumentative instructions on every theory of the case advanced by him which is supported by substantial evidence." (*Soule v. General Motors Corp.* (1994) 8 Cal.4th 548,

---

[2] A Penrose drain is a surgical rubber tubing placed in a wound to drain fluid. After it is surgically placed, it is cut to length, inserted in the wound, and then stitched to the skin at the exit point to prevent it from being pulled into the wound.

572 [34 Cal.Rptr.2d 607, 882 P.2d 298].) A judgment may not be reversed on the basis of instructional error unless the error caused a miscarriage of justice. (*Id.* at pp. 573–574.) Reversal is not warranted unless there is a reasonable probability that, in the absence of the error, a result more favorable to the appealing party would have been reached. (*Id.* at p. 574.) " ' "A reviewing court must review the evidence most favorable to the contention that the requested instruction is applicable since the parties are entitled to an instruction thereon if the evidence so viewed could establish the elements of the theory presented. . . ." [Citation.]' " (*Logacz v. Limansky* (1999) 71 Cal.App.4th 1149, 1157 [84 Cal.Rptr.2d 257].)

"A judgment will not be reversed for error[] in jury instructions unless it appears reasonably probable that, absent the error, the jury would have rendered a verdict more favorable to the appellant. [Citation.]" (*Bolen v. Woo* (1979) 96 Cal.App.3d 944, 951 [158 Cal.Rptr. 454].)

### *Res Ipsa Loquitur*

■ "Res ipsa loquitur is a doctrine affecting the burden of producing evidence applicable to certain kinds of accidents that are so likely to have been caused by a defendant's negligence that, in the Latin equivalent, ' "the thing speaks for itself." ' [Citation.] If applicable, the doctrine of res ipsa loquitur establishes a presumption of negligence requiring the defendant to come forward with evidence to disprove it. [Citations.]" (*Baumgardner v. Yusuf* (2006) 144 Cal.App.4th 1381, 1389 [51 Cal.Rptr.3d 277].)

■ "Res ipsa loquitur is a rule of evidence allowing an inference of negligence from proven facts. [Citations.] It is based on a theory of 'probability' where there is no direct evidence of defendant's conduct, [citations], permitting a common sense inference of negligence from the happening of the accident. [Citations.] The rule thus assists plaintiffs in negligence cases in regard to the production of evidence. [¶] The applicability of the doctrine depends on whether it can be said the accident was probably the result of negligence by someone and defendant was probably the person who was responsible. [Citations.] In the absence of such probabilities, there is no basis for an inference of negligence serving to take the place of evidence of some specific negligent act or omission. [Citation.] [¶] A plaintiff must produce the following evidence in order to receive the benefit of the doctrine: 1) the accident must be of a kind which ordinarily does not occur in the absence of someone's negligence; 2) it must have been caused by an agency or instrumentality within the exclusive control of the defendant; and 3) the accident must not have been due to any voluntary action or contribution on the part of the plaintiff. [Citations.]" (*Gicking v. Kimberlin* (1985) 170 Cal.App.3d 73, 75–76 [215 Cal.Rptr. 834].)

*The Trial Court Did Not Err in Refusing to Give the Res
Ipsa Loquitur Instruction as to Dr. Rayhrer*

The trial court initially denied Scott's request to instruct the jury on res ipsa loquitur as to either doctor. As to Dr. Rayhrer, the court found that no evidence was presented that her conduct fell below the standard of care when she installed the drains. The court concluded the evidence showed that any error could only have occurred when the drain was removed by Dr. Iwasiuk when Dr. Rayhrer was no longer involved in Scott's treatment.

▉ Scott contends the trial court erred in not applying the res ipsa loquitur instruction to Dr. Rayhrer, because she could have negligently placed more or longer drains than Dr. Iwasiuk knew and thus be an independent tortfeasor. Scott relies on *Summers v. Tice* (1948) 33 Cal.2d 80 [199 P.2d 1], where two hunters fired shotguns, and pellets from one of the guns lodged in the plaintiff's eye and lip, but it was not clear which gun injured the plaintiff. The Supreme Court held: "If defendants are independent tort feasors and thus each liable for the damage caused by him alone, and, at least, where the matter of apportionment is incapable of proof, the innocent wronged party should not be deprived of his right to redress. The wrongdoers should be left to work out between themselves any apportionment. [Citation.]" (*Id.* at p. 88.)

Scott also relies on *Ybarra v. Spangard* (1944) 25 Cal.2d 486 [154 P.2d 687], a case relied on by the *Summers* court. In *Ybarra*, the plaintiff was injured while he was unconscious during the course of surgery. He sought damages against several doctors and a nurse who attended him while he was unconscious. The court held that it would be unreasonable to require him to identify the particular defendant who had performed the alleged negligent act because he was unconscious at the time of the injury and the defendants exercised control over the instrumentalities which caused the harm. Therefore, under the doctrine of res ipsa loquitur, an inference of negligence arose that the defendants were required to meet by explaining their conduct.

Those cases are not apposite because they involve injuries which occurred while two or more defendants were acting in concert. Here, two separate procedures were performed independently by two different doctors. There was no evidence that Scott's injury was caused by the insertion of the drains by Dr. Rayhrer. The injury resulted from the drain's presence long after Dr. Rayhrer had ceased treating Scott. All the evidence, including that presented by Scott's expert, was that the procedure used in inserting the drains conformed to a reasonable standard of care. Therefore, Scott did not carry his burden of presenting " 'some substantial evidence which, if believed by the jury, would entitle it to draw an inference of negligence from the happening of the accident itself.' [Citation.]" (*Blackwell v. Hurst* (1996) 46

Cal.App.4th 939, 944 [54 Cal.Rptr.2d 209].) The trial court did not err in refusing to instruct the jury as to res ipsa loquitur with respect to Dr. Rayhrer.

*The Trial Court Did Not Err in Instructing the Jury That a*
*Finding of Negligence Must Be Based on Expert Testimony*

The trial court granted Scott's request to give a res ipsa loquitur instruction as to Dr. Iwasiuk. The court refused Scott's request to eliminate from the instruction the requirement that a finding of negligence be based only on expert testimony, concluding that the removal of Penrose drains involves matters beyond the common knowledge of the jury. The court gave the following instruction based on CACI No. 518 as to Dr. Iwasiuk: "Mr. Scott may prove that Dr. Iwasiuk's negligence caused his harm if he proves all of the following: One, that Mr. Scott's harm ordinarily would not have occurred unless someone was negligent. In deciding this issue, you must consider only the testimony of the expert witnesses. Two, that the harm occurred while Mr. Scott was under the care and control of Dr. Iwasiuk. And, three, that Mr. Scott's voluntary actions did not cause or contribute to the events that harmed him.

"If you decide that plaintiff, Mr. Scott, did not prove one or more of these three things, then your verdict must be for Dr. Iwasiuk. If you decide that plaintiff, Mr. Scott, proved all of these three things, you may but are not required to find that Dr. Iwasiuk was negligent or that Dr. Iwasiuk's negligence was a substantial factor in causing Mr. Scott's harm or both.

"You must carefully consider all the evidence presented before you make your decision. You should not decide in favor of Mr. Scott unless you believe after weighing all of the evidence that it is more likely than not that defendant Dr. Iwasiuk was negligent and that his negligence was a substantial factor in causing Mr. Scott's harm."

██ As a general rule, the testimony of an expert witness is required in every professional negligence case to establish the applicable standard of care, whether that standard was met or breached by the defendant, and whether any negligence by the defendant caused the plaintiff's damages. (*Flowers v. Torrance Memorial Hospital Medical Center* (1994) 8 Cal.4th 992, 1001 [35 Cal.Rptr.2d 685, 884 P.2d 142].) A narrow exception to this rule exists where " ' "the conduct required by the particular circumstances is within the common knowledge of the layman." [Citations.]' " (*Ibid.*) This exception is, however, a limited one. It arises when a foreign object, such as a sponge or surgical instrument, is left in a patient following surgery and applies only when the plaintiff can invoke the doctrine of res ipsa loquitur. (*Ibid.*; *Blackwell v. Hurst, supra*, 46 Cal.App.4th at pp. 943–944; *Gannon v.*

*Elliot* (1993) 19 Cal.App.4th 1, 6–7 [23 Cal.Rptr.2d 86].) "The 'common knowledge' exception is principally limited to situations in which . . . a layperson' . . . [can] say as a matter of common knowledge . . . that the consequences of professional treatment were not such as ordinarily would have followed if due care had been exercised.' [Fn. omitted.]" (*Flowers, supra,* at p. 1001, citations omitted.)

Scott argues that the trial court erred in instructing the jury that it must base a finding of negligence against Dr. Iwasiuk on expert testimony. He argues that the retained Penrose drain is similar to a sponge or clamp left in a patient's body after surgery and thus is within the common knowledge of the jurors. (See, e.g., *Franz v. Board of Medical Quality Assurance* (1982) 31 Cal.3d 124, 141 [181 Cal.Rptr. 732, 642 P.2d 792] ["Technical knowledge is not requisite to conclude that complications from . . . a surgical clamp left in the patient's body . . . indicate negligence. Common sense is enough to make that evaluation."].)

No California case has addressed the issue of whether a retained Penrose drain should be treated like a retained sponge or clamp for purposes of a res ipsa loquitur instruction. Cases in other jurisdictions have reached conflicting conclusions on the issue. Wisconsin, for example, does not differentiate between a retained Penrose drain and a sponge or clamp when instructing the jury on res ipsa loquitur. In *Froh v. Milwaukee Medical Clinic, S.C.* (Ct.App. 1978) 85 Wis.2d 308 [270 N.W.2d 83], the trial court granted a physician's motion to dismiss at the conclusion of the defendant's evidence on the ground that the plaintiff's evidence did not sustain a cause of action for malpractice. The court of appeals reversed, holding that the motion should not have been granted and that the jury should have been instructed on the doctrine of res ipsa loquitur.

The court stated: "The trial judge attempted to distinguish the application of res ipsa loquitur to the cases involving the failure to remove surgical tools and sponges from the insertion of a drain that is to remain in the incision after surgery is completed for therapeutic reasons. That distinction is invalid because it overlooks the medical testimony from Dr. Schmidt that presence of the drain for more than 7 days will result in infection. The attempted distinction also overlooks the testimony that the surgeon was unable to locate the drain or to account for its disappearance although it should have been removed within a short period of time after its insertion. [¶] . . . [¶] We are clearly of the opinion that a layman is able to conclude as a matter of common knowledge that a Penrose drain of this type left inside the body of an individual beyond the time that it serves the purpose for which it was inserted will cause infection as occurred in this case as a result of the professional treatment herein. [¶] We are further of the opinion that a layman

can have an opinion that the consequences of this professional treatment are not those which ordinarily result if due care is exercised in that the doctor testified that when drains are left within the body there is evidence that infection will result if they are in that body for a period of more than 7 days. This does not require medical expert testimony." (*Froh v. Milwaukee Medical Clinic, S.C., supra*, 270 N.W.2d at p. 86.)

The Alabama Supreme Court reached a contrary conclusion in *Gilbert v. Campbell* (Ala. 1983) 440 So.2d 1048. In that case, Penrose drains were inserted in a patient's rectum after surgery to remove a tumor in the colon. The first drain came out on its own. The second one was removed by pulling it out of the rectum. Subsequently, the patient developed infections in his abdomen and a fistula, or tunnel, between the abscess and the exterior left buttock, was formed. The patient was referred to a different surgeon who performed an operation to close off the fistula from the inside. During the procedure, the doctor found a piece of Penrose drain in the tract of the fistula.

After the close of the defendant's case, the trial court directed a verdict in favor of the doctor who had failed to completely remove the drain on the ground that there was no evidence of negligence. On appeal, the patient argued the directed verdict was erroneous because he had established a prima facie case against the doctor under the doctrine of res ipsa loquitur. The supreme court rejected the argument, stating: "Expert medical testimony is required in this case to describe the proper use, purpose, insertion, and removal of a Penrose drain. Drs. Halpern and Campbell testified that a Penrose drain is a latex tube, varying in width and length. It is designed to serve as a temporary drain of fluids, infected matter, and other material. Neither had heard of any procedure for, or requirement that, the Penrose drain be measured prior to insertion and after removal to determine whether the full length of the tube had been removed. Neither followed such a procedure, and Dr. Campbell admitted that no measurements or comparisons of the lengths of the drains as they were inserted and removed were made during his treatment of Gilbert. Both physicians conceded that a drain may break while inside the body, leaving a piece inside while the rest of the drain is removed. Dr. Halpern testified that a physician probably would not know if a drain broke unless it was apparent to him that the portion removed was less than the length inserted. Dr. Campbell said that if a Penrose drain were to break *while* it was being removed, he probably would know because he would feel something 'pull or snap,' and the broken end of the drain would be jagged.

"There was undisputed expert testimony from Dr. Halpern that there had been no substandard medical practice by Dr. Campbell in the course of his treatment of Gilbert, including the use of the Penrose drain. According to the expert testimony, the standard medical procedure requires that a physician,

who is aware of the presence of a non-functioning piece of Penrose drain inside the patient's body, remove it as soon as possible. There was no evidence that Dr. Campbell's conduct fell below this standard. It is undisputed that he had no knowledge of the presence of the drain. It failed to show up on the X-rays, and it was not capable of being seen upon external examination. Furthermore, due to the nature and severity of Gilbert's illness, Dr. Campbell had no reason to believe that his suffering was caused by something other than the disease.

"The mere fact that Gilbert's condition may have been made worse by the presence of the drain and the fact that a piece of the drain was found in his abdomen does not shift the burden of proof." (*Gilbert v. Campbell, supra,* 440 So.2d at p. 1049.)

In *Powell v. Mullins* (Ala. 1985) 479 So.2d 1119, the Alabama Supreme Court held that an allegation that a doctor left a foreign object inside the plaintiff's body after surgery comes within an exception to the requirement of expert testimony when the negligence is sufficiently apparent to be understood by a layman without the use of expert medical testimony. The court distinguished *Gilbert*, stating: "Without question, the circumstances in *Gilbert, supra,* involved complex medical procedures beyond the comprehension of a layman. In that case, the mere presence of the broken piece of drain in the plaintiff's body was not enough to establish a prima facie case of negligence for several reasons. First, the drain did not show up on X-rays, and it could not have been seen by an external examination. Second, due to the nature and severity of the plaintiff's illness, the defendant had no reason to believe that plaintiff's suffering was caused by something other than his disease. Third, in presenting his case, the defendant put on undisputed expert testimony that not only was there no standard practice or procedure whereby a doctor, after removal, could determine whether the full length of the drain had been removed, but also that the defendant had engaged in no substandard medical practice in the course of his treatment of the plaintiff." (*Powell,* at pp. 1122–1123.)

The Washington Supreme Court in *Miller v. Jacoby* (2001) 145 Wn.2d 65 [33 P.3d 68], took a different approach. In that case, the trial court entered summary judgment in favor of two physicians who were sued for malpractice for leaving a Penrose drain in a patient after kidney surgery because the plaintiff had presented no expert medical opinion to refute that submitted by the physicians. As in this case, one surgeon placed the drains and a different surgeon removed them. A court of appeal majority affirmed, concluding that " 'without expert testimony, a layperson could not determine whether the physicians failed to act in a reasonably prudent manner.' " (*Id.,* 33 P.3d at p. 71.) The supreme court affirmed summary judgment as to the physician

who placed the drain, stating: "Without knowing the professional standard of care for a health care provider placing a Penrose drain during surgery, a layperson would not be able to determine that Miller's injury would not have occurred absent negligence . . . . For these reasons, the doctrine of res ipsa loquitur is not available to impose liability [on the physician inserting the drain]." (*Id.* at pp. 72–73.) With respect to the physician who removed the drain, the court reached a different conclusion, holding that a trier of fact should be permitted to use the doctrine of res ipsa loquitur to determine whether negligence occurred. (*Id.* at p. 73.)

■ As noted above, no California court has determined whether a retained Penrose drain should be regarded as a "foreign object" so that common knowledge and observation among laymen is sufficient to indicate " 'that the consequences of the professional treatment were not such as ordinarily would have followed if due care had been exercised' " (*Bardessono v. Michels* (1970) 3 Cal.3d 780, 789 [91 Cal.Rptr. 760, 478 P.2d 480]), or whether the medical procedure involved is so complex that expert testimony is required to establish the requisites of the doctrine (*id.* at pp. 789–790). It has been established, however, that "in determining whether the occurrence of injury is of such a nature that it probably was the result of the negligence of someone under the res ipsa loquitur doctrine, the trier of fact may rely on both medical testimony and common knowledge." (*Id.* at p. 793, fn. 11.)

This court considered the doctrine of res ipsa loquitur in *Blackwell v. Hurst, supra,* 46 Cal.App.4th 939. There a jury found in favor of a dentist in a malpractice action arising from the death of a patient who aspirated a broken crown that the defendant dropped on her tongue. The trial court refused to give a res ipsa loquitur instruction. We reversed, holding that such an instruction should have been given, and that expert testimony was required. "The divergence in testimony on this issue illustrates that steps that a dentist might have taken to prevent aspiration of a dropped object are not matters of common knowledge." (*Id.* at p. 944.)

■ Our decision in *Blackwell* is supported by *Tomei v. Henning* (1967) 67 Cal.2d 319 [62 Cal.Rptr. 9, 431 P.2d 633]. In that case, our Supreme Court reversed a judgment for a defendant doctor based on the trial court's failure to give a requested res ipsa loquitur instruction. While performing a hysterectomy, the doctor had accidently sutured the plaintiff's ureter in two places. Corrective surgery failed and it was necessary to remove the plaintiff's right kidney. The court held that a res ipsa loquitur instruction should have been given, and that expert testimony was required to determine negligence. "Since the res ipsa loquitur instruction permits the jury to infer negligence from the happening of the accident alone, there must be a basis either in common

experience or expert testimony that when such an accident occurs, it is more probably than not the result of negligence. [Citations.] Since the question whether, in the light of past experience, the accident in this case was probably the result of negligence is not a matter of common knowledge among laymen, expert testimony is necessary to determine whether a probability of negligence appears from the happening of the accident." (*Id.* at p. 322.)

The court explained the effect of such an instruction. "It would have focused consideration on the inferences that could be drawn from the happening of the accident itself as distinct from the inferences that could be drawn from the evidence of the specific procedures available to a surgeon to avoid suturing a ureter or to discover such suturing in time to correct it before closing the wound. . . . Had the instruction been given . . . the jury might reasonably have concluded that regardless of how the accident happened or how it could have been avoided, its happening alone supported an inference of negligence." (*Tomei v. Henning, supra*, 67 Cal.2d at pp. 323–324.)

■ These cases persuade us that the trial court did not err in requiring the jury to rely on expert testimony in finding negligence. We do not agree with Scott that a retained Penrose drain should be treated like a retained sponge or clamp for purposes of res ipsa loquitur. The presence of the drain in plaintiff's body is superficially similar to a retained drain or sponge. However, the drain was not inadvertently left during surgery; it was inserted after surgery and was meant to be retained temporarily. The retention and removal of the drain involve complex medical procedures beyond the comprehension of a layman. Due to the nature and severity of Scott's symptoms, Dr. Iwasiuk had no reason to believe that Scott's continuing distress was caused by something other than his disease. In addition, plaintiff presented no evidence of a standard practice or procedure involving the determination of whether the full length of the drain had been removed. As in *Blackwell v. Hurst, supra*, 46 Cal.App.4th 939, we conclude that the presence of a foreign object in Scott's body requires a res ipsa loquitur instruction, but that negligence must be established by expert testimony. The trial court did not err in this regard.

*The Trial Court Did Not Err in Its Instruction to the Jury on the Standard of Care*

■ The plaintiff in a medical malpractice action must show by competent expert evidence that the defendant's medical treatment fell below the community standard of care. (*Landeros v. Flood* (1976) 17 Cal.3d 399, 408–410 [131 Cal.Rptr. 69, 551 P.2d 389].)

Scott requested the court give CACI No. 413 which states: "You may consider customs or practices in the community in deciding whether defendant acted reasonably. Customs and practices do not necessarily determine what a reasonable person would have done in defendant's situation. They are only factors for you to consider. [¶] Following a custom or practice does not excuse conduct that is unreasonable. You should consider whether the custom or practice itself is reasonable." The court did not give this instruction when it explained the standard of care to the jury.

Instead, the court instructed the jury with CACI No. 502, the standard jury instruction as to the standard of care for medical specialists, as follows: "A general surgeon is negligent if he or she fails to use the level of skill, knowledge, and care in diagnosis and treatment that other reasonably careful general surgeons would use in similar circumstances. This level of skill, knowledge and care is sometimes referred to as the 'standard of care.' You must determine the level of skill, knowledge and care that other reasonably careful general surgeons would use in similar circumstances based only on the testimony of the expert witnesses, including Dr. Iwasiuk and Dr. Rayhrer, who have testified in this case."

The court then instructed the jury with CACI No. 505 which states: "A general surgeon is not necessarily negligent just because his or her efforts are unsuccessful or he or she makes an error that was reasonable under the circumstances. A general surgeon is negligent only if he or she was not as skillful, knowledgeable, or careful as other reasonable general surgeons would have been in similar circumstances."

■ Scott argues that the failure of the court to give CACI No. 413 was prejudicial error because, in the absence of the instruction, the jury was left with the impression that conforming to a customary practice insulated defendants from liability arising from that practice. This argument is contrary to the well-established principle that the law " ' "demands only that a physician or surgeon have the degree of learning and skill ordinarily possessed by practitioners of the medical profession in the same locality and that he [or she] exercise ordinary care in applying such learning and skill to the treatment of [the] patient." [Citation.]' [Citation.]" (*Flowers v. Torrance Memorial Hospital Medical Center, supra,* 8 Cal.4th at p. 998, italics omitted.) CACI No. 413 applies only where the standard of care is within common knowledge. (*Leonard v. Watsonville Community Hosp.* (1956) 47 Cal.2d 509, 519 [305 P.2d 36].) The instruction is not appropriate where, as here, the standard of care must be established by expert testimony. (See

*Osborn v. Irwin Memorial Blood Bank* (1992) 5 Cal.App.4th 234, 276–277 [7 Cal.Rptr.2d 101] [where expert testimony is needed to show negligence, that testimony establishes the standard of care].)

The judgment is affirmed. Respondents shall recover costs on appeal.

Gilbert, P. J., and Coffee, J., concurred.

Appellants' petition for review by the Supreme Court was denied September 15, 2010, S184999.