Filed 11/14/14  Sperber v. Regents of the University of Cal. CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| REBECCA SPERBER et al., | B247910 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. SC115386) |
| v. | |
| THE REGENTS OF THE UNIVERSITY OF CALIFORNIA et al., | |
| Defendants and Respondents. | |

APPEAL from judgment of the Superior Court of Los Angeles County, Gerald Rosenberg, Judge.  Affirmed.

Black, Compean, & Hall and Michael E. Compean for Plaintiffs and Appellants.

Bonnie, Bridges, Mueller, O'Keefe & Nichols, Carolyn Lindholm; Greines, Martin, Stein & Richland, Martin Stein and Carolyn Oill for Defendants and Respondents.

_____

# INTRODUCTION

Plaintiffs Rebecca Sperber and the estate of Edith Sperber appeal the trial court's order granting Defendants' motion for summary judgment in their wrongful death lawsuit against Defendants the Regents of the University of California, Nova Foster, M.D., Victor Duval, M.D., Stephanie Berman, M.D., Yu Cheng-Wen, M.D., and Patricia Eshagain, M.D. In their motion, Defendants produced expert testimony from doctors attesting that the medical care provided to Edith[1] did not fall below the standard of care and that their actions did not cause or contribute to Edith's death. Plaintiffs opposed the motion, relying solely on Rebecca's declaration regarding Defendants' medical care of her mother. Plaintiffs assert that Rebecca's declaration provided evidence that raises a triable issue of material fact. Plaintiffs also argue that they were wrongfully denied a continuance of the motion for summary judgment, with which they intended to depose Defendants' experts. We affirm the trial court because Plaintiffs failed to create a triable issue of material fact regarding breach of the standard of care or causation and because they provided insufficient reasons to continue the motion.

## FACTS AND PROCEDURAL BACKGROUND

Edith, an 80-year-old woman with multiple medical conditions and a complex medical history, presented to the emergency department at Santa Monica-UCLA Medical Center reporting severe chest pain. Edith was admitted to the hospital for further evaluation. During the course of her stay, doctors determined that Edith suffered from acute renal failure, a urinary tract infection, bacteremia, and acute cholecystitis. Surgeons performed a laparoscopic cholecystectomy to remove Edith's gallbladder in order to address the acute cholecystitis. Post surgery, she developed atrial fibrillation, pneumonia, and then fluid overload, for which she received dialysis. When her respiratory condition worsened about a month after her admission to the hospital, Edith was moved to the Intensive Care Unit. After two months in the hospital, Edith informed

---

[1]     We refer to Rebecca and Edith Sperber by their first names for the sake of clarity and not out of disrespect.

2

hospital staff and her physicians that she wanted to discontinue treatment and be discharged home. Edith expressed that she understood that she would die within a week if she did not continue to receive treatment from the hospital. Edith's daughter Rebecca was also present for some of the discussions regarding Edith's choice to discontinue treatment and understood that Edith would die without it. Edith was discharged, received hospice care at home, and died two days later.

Plaintiffs filed a complaint against Defendants alleging medical negligence resulting in Edith's death. Defendants moved for summary judgment based on expert declarations attesting that nothing the doctors or hospital staff did or failed to do was below the standard of care and nothing they did or failed to do contributed to Edith's death. Plaintiffs opposed the motion, solely relying on Rebecca's declaration, which stated that she disagreed with Defendants' experts and that the doctors breached the standard of care and caused her mother's death. In the declaration, Rebecca, who is a Marriage and Family Practice Therapist, explained that her opinion was based on her review of her mother's medical records and her "consultation with others, including [her] cousin, Roxanne Giorhiu, who is a registered and licensed medical nurse." Plaintiffs did not offer any other evidence in support of their opposition to the motion. The trial court granted Defendants' motion for summary judgment, finding that Plaintiffs could not prove breach of duty or causation, and that there was an insufficient showing by Plaintiffs to warrant a continuance of the motion.

**DISCUSSION**

Plaintiffs raise two issues on appeal: (1) whether Rebecca's declaration regarding breach of the standard of medical care and causation of her mother's death was sufficient to create a triable issue of material fact to preclude summary judgment, and (2) whether the court properly denied her request for a continuance of the motion for summary judgment.

3

*1.       Plaintiff's Declaration Was Insufficient to Create a Triable Issue of Material Fact*

We review the trial court's decision as to a motion for summary judgment de novo, considering all of the evidence in the moving and opposing papers.  (*Wilson v. 21st Century Ins. Co.* (2007) 42 Cal.4th 713, 717.)  " 'We liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party.' "  (*Ibid.*)  A party moving for summary judgment "bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law."  (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850, fn. omitted (*Aguilar*).)  "There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof."  (*Ibid.* fn. omitted.)

"A defendant bears the burden of persuasion that 'one or more elements of' the 'cause of action' in question 'cannot be established,' or that 'there is a complete defense' thereto.  [Citation.]"  (*Aguilar, supra,* 25 Cal.4th at p. 850.)  In general, "the party moving for summary judgment bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact; if he carries his burden of production, he causes a shift, and the opposing party is then subjected to a burden of production of his own to make a prima facie showing of the existence of a triable issue of material fact."  (*Ibid.*)  "A prima facie showing is one that is sufficient to support the position of the party in question. [Citation.]"  (*Id*. at p. 851,)  "The purpose of summary judgment is to separate those cases in which there are *material* issues of fact meriting a trial from those in which there are no such issues."  (*Sangster v. Paetkau* (1998) 68 Cal.App.4th 151, 162.)

In their motion for summary judgment, Defendants asserted that Plaintiffs could not prove breach of the standard of care or causation.  "As a general rule, the testimony of an expert witness is required in every professional negligence case to establish the applicable standard of care, whether that standard was met or breached by the defendant,

4

and whether any negligence by the defendant caused the plaintiff's damages." (*Scott v. Rayhrer* (2010) 185 Cal.App.4th 1535, 1542 (*Scott*); *Dumas v. Cooney* (1991) 235 Cal.App.3d 1593, 1603 [" '[C]ausation must be proven within a reasonable medical probability based upon competent expert testimony.' "]; *Bromme v. Pavitt* (1992) 5 Cal.App.4th 1487, 1492-1493 ["[A] plaintiff who alleges a statutory cause of action for wrongful death arising from medical negligence must prove by reasonable medical probability based on competent expert testimony that a defendant's acts or omissions were a substantial factor in bringing about the decedent's death."].)  There is one limited exception to this rule in cases where the conduct required by the standard of care is common knowledge to a layperson and the plaintiff can invoke the doctrine of res ipsa loquitur to prove duty and breach, e.g., where a sponge or surgical instrument is accidentally left in a patient during surgery.  (*Scott,* at p. 1542.)  "The 'common knowledge' exception is principally limited to situations in which . . .  a layperson '[can] say as a matter of common knowledge . . . that the consequences of professional treatment were not such as ordinarily would have followed if due care had been exercised.' (Citation.)"  (*Flowers v. Torrance Memorial Hospital Medical Center* (1994) 8 Cal.4th 992, 1001, fn. omitted.)

At issue in this case is whether Edith should have had the laparoscopic cholecystectomy, whether the surgery was performed correctly, whether Edith was given proper treatment and care during her tenure in the hospital, and whether the doctors' and/or hospital staff's treatment and care of Edith caused her death.  These are not matters of common knowledge, like the obvious breach involved when doctors inadvertently leave a foreign object inside a surgical cavity.  Plaintiffs cannot utilize res ipsa loquitur to establish negligence in this context.  Expert opinions are necessary here to address the standard of care, breach, and causation.

In their motion for summary judgment, Defendants provided the requisite expert opinions from medical doctors Leo A. Gordon, M.D., and Andrew S. Wachtel, M.D., to establish the standard of care, address breach, and discuss causation.  Dr. Gordon's declaration provided his credentials as a medical doctor and described his almost 35 years

of experience practicing surgical medicine. He attested that his background, training, and experience as a surgeon made him familiar with the standard of care for physicians practicing in the specialty of general surgery in Southern California. He provided the opinion that the hospital obtained the appropriate informed consent from Edith to perform the laparoscopic cholecystectomy. Dr. Gordon attested that based on his background, training, and experience as a general surgeon, and review of Edith's medical records and Rebecca's deposition testimony, the laparoscopic cholecystectomy was medically indicated, Edith was an appropriate surgical candidate at that time, and the surgery was performed in a manner within the standard of care. Dr. Gordon stated that the post-operative pathology report further supports the decision to proceed with surgery at that time. He concluded that "there is no basis for any allegation of a breach in the standard of care relating to the surgery performed on the patient."

Likewise, Dr. Wachtel's declaration describes his 30 years of experience practicing internal, pulmonary, and critical care medicine, which included experience in managing and treating patients in hospital intensive care units. He stated that his background, training and experience made him a specialist in and familiar with the standard of care for physicians practicing in those aforementioned specialties in Southern California. Based on his review of Rebecca's deposition transcript and exhibits, and Edith's medical records from her two-month stay at Santa Monica-UCLA Medical Center, Dr. Wachtel attested that Edith gave informed consent to discontinue treatment. He also stated that "had [Edith] continued the course of care she was receiving in the hospital, and not left the hospital . . . , she would have survived and recovered sufficiently to be discharged from the hospital; that her death was not caused by the medical care she received at Santa Monica-UCLA Medical Center, but was caused by her own decision to stop treatment and leave the hospital; that the healthcare providers at Santa Monica-UCLA Medical Center did not cause Edith Sperber's death." Dr. Wachtel further stated that he did not "believe that there is any basis for plaintiff's allegations of medical negligence" and that it was his "expert opinion that the care and treatment [Edith] received during both of her admissions to the Intensive Care Unit was appropriate and

6

within the standard of care; that within reasonable medical probability, nothing that anyone did or failed to do in the Intensive Care Unit caused any injury or harm to the patient; that the deterioration of the patient's condition during her hospitalization did not occur as a result of any medical negligence by any of her healthcare providers, including but not limited to the individually-named physician defendants."

Dr. Wachtel stated that there was "no basis for the allegation that the hospital had an inadequate protocol for dialogue between the patient's primary care physician and the hospital staff, and the medical records indicate more than adequate dialogue between the patient's primary care physician and hospital physicians." He explained that there was no negligence by the hospital or its staff with regard to the administration of Lipitor, management of Edith's breathing problems, utilization of a breathing device after her surgery, or her final hospitalization. In sum, Dr. Wachtel attested that he did "not believe there is any basis for the plaintiff's Complaint alleging medical negligence by any defendant in this matter."

With this evidence, Defendants made a prima facie case that Plaintiffs would not be able to prove breach or causation, as both doctors explained that Defendants satisfied the applicable standard of care and did not contribute to Edith's death. Defendants thus shifted the burden to Plaintiffs to produce evidence that would create a triable issue of fact regarding both breach and causation. (*Aguilar, supra,* 25 Cal.4th at p. 850 [explaining that when a defendant makes a prima facie showing that the plaintiff cannot prove one or more elements of her cause of action, the burden of production shifts to the plaintiff].) As explicated above, expert testimony is required to establish the applicable standard of care, breach of the standard, and causation. (*Scott, supra,* 185 Cal.App.4th at p. 1542.) Like Defendants, Plaintiffs had to present expert opinions in their opposition in order to provide evidence regarding breach and causation to create a triable issue of material fact.

In support of their opposition, Plaintiffs only provided Rebecca's declaration. Within the declaration, Rebecca identified herself as a Marriage and Family Practice Therapist. She explained that her opinion was based on her review of her mother's

7

medical records and her "consultation with others, including [her] cousin, Roxanne Giorhiu, who is a registered and licensed medical nurse." She provided no other authority or credentials that equipped her with expertise regarding medical treatment and care.

In her declaration, Rebecca stated that she disagrees with the opinion of Dr. Gordon that gallbladder surgery was medically indicated, that her mother was an appropriate candidate for surgery, and that the surgery was performed in a manner consistent with the standard of care. In support of these statements, Rebecca engages in analysis of her mother's medical condition and the care provided to her by the hospital. Rebecca states that, "First, the medical records . . . indicate that prior to the . . . surgery she did not have an elevated white blood cell count (leukocytosis), and that she did not have a fever. In addition, those records indicate at that same time my mother did not have what is known as 'Murphy's sign', [*sic*] which I understand to be a reaction to a physical examination on the abdomen done on a patient suspected of having acute cholecystitis, and which I understand to be a test doctors consider typically to be positive for cholecystitis. In addition, . . . she also did not have nausea or vomiting after eating, nor did she have jaundice, nor did she have a change in her bowel movement or color." Rebecca does not explain how these items impacted her mother's candidacy and the necessity for surgery.

Rebecca went on to state: "it is my view and belief that the post-operative pathology report for my mother did not support the decision of the doctors . . . to proceed with gallbladder surgery on her as they did. As I understand it, that report indicated her serosa membrane around the gallbladder was smooth and only slightly engorged (hyperemic), that the [gallbladder] thickness at that time measured 0.1 cm to 0.2 cm (whereas, as I understand it, indications for surgery are greater than [0.04 cm]), that there was [*sic*] no choleliths (gall stones), no mass, no lesions, no hemorrhage, and no necrosis (tissue death), and that only slight yellow green contents were found during my mother's surgery, which I understand could be interpreted as normal bile." In addition, Rebecca also stated that she disagrees with Dr. Wachtel's opinion that there was adequate dialogue

between physicians, and that Defendants did not breach the standard of care and cause harm to her mother. Yet, Rebecca did not provide any analysis as to why she disagrees with Dr. Wachtel's opinions on these topics.

This declaration is wholly insufficient to create a triable issue of material fact because Rebecca failed to state facts to establish foundation for her expertise to provide such an opinion. "[A] party opposing a motion for summary judgment may use declarations by an expert to raise a triable issue of fact on an element of the case provided the requirements for admissibility are established as if the expert was testifying at trial." (*Towns v. Davidson* (2007) 147 Cal.App.4th 461, 472.) "A person is qualified to testify as an expert if he has special knowledge, skill, experience, training, or education sufficient to qualify him as an expert on the subject to which his testimony relates." (Evid. Code, § 720.) In order to establish Rebecca's authority to provide an opinion regarding Defendants' medical negligence and issues related to the surgery, treatment, and care of her mother, Rebecca's declaration had to contain facts showing that she has the training, experience, or necessary skill to render an opinion regarding surgical, internal, pulmonary, and critical care medicine.

Rebecca failed to describe how she has any medical experience or training. She only stated that she is a Marriage and Family Practice Therapist who has "consult[ed] with others, including [her] cousin, Roxanne Giorhiu, who is a registered and licensed medical nurse," Simply consulting with others, including a medical nurse, without more, is insufficient to furnish Rebecca with the expertise to discuss and analyze the serosa membrane around her mother's gallbladder, leukocytosis, Murphy's sign, the post-operative pathology report, or any of the other medical issues addressed in her declaration. It is well established that expert testimony is needed to dissect and analyze the complex medical standards of care and technical issues that are beyond the comprehension of a layman, like those presented by this case. (*Scott, supra,* 185 Cal.App.4th at pp. 1545-1547.) Rebecca lacks the medical training and experience, i.e., the expertise, necessary to provide such opinions regarding breach of the standard of

9

care and causation. Her opinions therefore lack any foundation and do not provide evidence to rebut the expert opinions provided by Defendants.

We note that at the hearing on the motion for summary judgment, Plaintiffs' attorney told the trial court that Rebecca's declaration is "based on information that she has gotten from her cousin, Roxanne [Giorhiu], who is a licensed nurse, who has years of experience as what they call a 'hospital release nurse;' in other words, evaluating people for whether they are appropriate for release from the hospital or not." Plaintiffs' attorney asserted that this nurse's information was "based specifically on medical journals and articles that are and were written by doctors, competent doctors. They are all not just research articles, but they are articles that are used in the medical profession to which doctors consult on these issues." Plaintiffs assert that because Rebecca relied on this nurse's opinion and this nurse relied on unknown medical articles, "[t]here is no reason . . . the opinions expressed in Ms. Sperber's declaration in support of her opposition to the motion . . . should not have been given equal weight as the declaration testimony of Dr. Gordon and/or Dr. Wachtel."

To the extent Plaintiffs rely on their counsel's comments at the hearing as evidence, we remind them that " '[e]vidence' means testimony, writings, material objects, or other things presented to the senses that are offered to prove the existence or nonexistence of a fact." (Evid. Code, § 140.) It is well settled that "[s]tatements and arguments by counsel are not evidence." (*Gdowski v. Gdowski* (2009) 175 Cal.App.4th 128, 139.) Therefore neither the trial court nor this Court may consider those statements when evaluating whether Plaintiffs met their burden of production. Furthermore, vague and attenuated statements, regarding how Rebecca in making her declaration relied on a nurse who relied on unidentified medical articles, still fail to provide the foundation necessary to make Rebecca an expert on the subject matter. (*Howard Entertainment, Inc. v. Kudrow* (2012) 208 Cal.App.4th 1102, 1115 ["The foundation required to establish the expert's qualifications is a showing that the expert has the requisite knowledge of, or was familiar with, or was involved in, a sufficient number of transactions involving the subject matter of the opinion."].) Counsel's comments also indicate that Rebecca's

10

declaration includes inadmissible hearsay or opinion, and that Rebecca lacks personal knowledge regarding the matters discussed in her declaration. (See *Bozzi v. Nordstrom, Inc.* (2010) 186 Cal.App.4th 755, 761 ["Declarations must show the declarant's personal knowledge and competency to testify, state facts and not just conclusions, and not include inadmissible hearsay or opinion."].)

Plaintiffs attempt to liken Rebecca's declaration to the testimony of an expert epidemiologist, who Plaintiffs note "was <u>not</u> a medical doctor," in *Hernandez v. Amcord, Inc.* (2013) 215 Cal.App.4th 659, 674. There, the Court of Appeal concluded the epidemiologist's testimony constituted sufficient evidence of causation in an asbestos case. (*Ibid.*) In doing so, the Court stated that "medical evidence does not necessarily have to be provided by a medical doctor." (*Id.* at p. 675.) We agree that, depending on the facts of the case and the specific issues that require expert testimony, someone other than a medical doctor can be an expert on medical issues. (*People v. Catlin* (2001) 26 Cal.4th 81, 131–132 ["[q]ualifications other than a license to practice medicine may serve to qualify a witness to give a medical opinion"], overruled on another ground in *People v. Nelson* (2008) 43 Cal.4th 1242, 1253-1256.) Nonetheless, the person making the expert declaration or testifying as an expert must show that they are qualified to provide an opinion on the subject matter. Rebecca's declaration is deficient in this regard: she lacks any qualifications to provide an opinion regarding medical negligence.

Lastly, in their opposition, Plaintiffs assert that if they were to cross-examine Defendants' experts, they would obtain evidence to support their claims for negligence. The Legislature has established that "summary judgment may not be denied on grounds of credibility or for want of cross-examination of witnesses furnishing affidavits or declarations in support of the summary judgment . . . ." (Code Civ. Proc., § 437c, subd. (e); see *Trujillo v. First American Registry, Inc.* (2007) 157 Cal.App.4th CA4th 628, 636.) Failure to depose Defendants' experts thus has no impact on our analysis of the burdens and evidence at issue in the motion for summary judgment and Plaintiffs' opposition.

In sum, Rebecca's declaration was insufficient to create a triable issue of material fact. Plaintiffs have provided no other evidence of medical negligence. We therefore affirm the trial court's grant of summary judgment because Plaintiffs cannot prove breach or causation.

### 2.    *A Continuance Was Not Warranted*

Plaintiffs assert that the trial court improperly denied their request for a continuance of the motion for summary judgment. "When a party makes a good faith showing by affidavit demonstrating that a continuance is necessary to obtain essential facts to oppose a motion for summary judgment, the trial court must grant the continuance request. [Citation.] 'Continuance of a summary judgment hearing is not mandatory, however, when no affidavit is submitted or when the submitted affidavit fails to make the necessary showing under [Code of Civil Procedure] section 437c, subdivision (h). [Citations.] Thus, in the absence of an affidavit that requires a continuance under section 437c, subdivision (h), we review the trial court's denial of appellant's request for a continuance for abuse of discretion.' " (*Park v. First American Title Co.* (2011) 201 Cal.App.4th 1418; *Combs v. Skyriver Communications, Inc.* (2008) 159 Cal.App.4th 1242, 1270.)

Under Code of Civil Procedure section 437c[2], subdivision (h), a continuance can only be granted where "facts essential to justify opposition may exist but cannot, for reasons stated, then be presented." "An opposing party's declaration in support of a motion to continue the summary judgment hearing should show the following: (1) '*Facts* establishing *a likelihood that controverting evidence may exist* and *why* the information sought is *essential* to opposing the motion'; (2) 'The *specific reasons* why such evidence cannot be presented at the present time'; (3) 'An estimate of the *time* necessary to obtain such evidence'; and (4) 'The specific steps or procedures the opposing party intends to utilize to obtain such evidence.' " (*Johnson v. Alameda County Medical Center* (2012)

---

[2]    All references to section hereafter refer to the Code of Civil Procedure.

205 Cal.App.4th 521, 532, quoting Weil & Brown, Cal. Practice Guide: Civil Proc. Before Trial (The Rutter Group 2011) ¶ 10:207.15, p. 10-83 (rev. #1, 2011).)

Plaintiffs rely entirely on Rebecca's declaration to satisfy section 437c, subdivision (h). In her declaration, Rebecca stated "I have not, as yet, had an opportunity to depose Dr. Gordon in this action. However, given the opportunity to do so, I would present him with the indications about my mother set forth above, in order to dispute and question the opinion stated about my mother's gallbladder surgery in his declaration filed in support of the defendants [*sic*] motion." She also stated that "I have not, as yet, had an opportunity to depose Dr. Wachtel in this action. However, given the opportunity to do so, I would present him with the indications about my mother set forth above, in order to dispute and question the opinions stated about my mother's hospital stay at the SM-UCLA Med. Center." Notably, "the indications about my mother set forth above" referred to by Rebecca are paraphrased and excerpted above in section 1 of this opinion.

This declaration is insufficient to make the showing necessary under the statute. Rebecca does not provide facts establishing a likelihood that controverting evidence may exist. As detailed in section one, she stated that she disagrees with Defendants' experts and mentions medical items without explaining to the court their meaning or how they contradict Defendants' experts' opinions. It is unclear what facts she intended to elucidate from deposing Defendants' experts. According to the declaration, Rebecca would only attack the experts' credibility and question the experts' opinions by presenting them with her "indications." Simply saying she intends to expose weaknesses in their opinions fails to pass muster for the purpose of a continuance. Rebecca needed to indicate in good faith the essential facts that she believed existed to oppose the motion and the reasons those facts could not be presented in opposition to the motion. The specific reasons why such evidence could not have been presented in the opposition are not stated: if facts in favor of Plaintiffs' medical negligence arguments do exist, Plaintiffs could have hired their own experts to discuss such facts in a declaration. Plaintiffs were not limited to cross examination of Defendants' witnesses to prove medical negligence.

13

The Court of Appeal addressed a similar situation in *Cheviot Vista Homeowners Assn v. State Farm Fire & Casualty Co.* (2006) 143 Cal.App.4th 1486, 1495, when reviewing a trial court's order granting summary judgment in favor of an insurance company and denial of the plaintiff homeowners association's request for a continuance. One of the main issues raised in the motion was the amount and cost of property damage incurred by an earthquake, and whether the cost of the damage exceeded homeowners association's insurance deductibles. (*Id*. at pp. 1495-1496.) The insurance company had produced evidence from their assessors indicating the extent of the damage was less than the deductible. (*Id*. at p. 1496.) In opposition, the homeowners association relied on a declaration from their attorney, who asserted that a continuance was necessary to designate and depose expert witnesses on the issue of the cost of the earthquake damage. (*Id*. at pp. 1498-1499.) Homeowners association presented no other evidence. (*Id*. at p. 1499.) The Court of Appeal held that "the Homeowners Association's position [that] it was entitled to at least a continuance of the summary judgment motion on the basis 'experts have not been designated or deposed' is simply nonsensical. Nothing, other than perhaps questionable tactics, prevented the Homeowners Association from relying on its own expert evidence in opposing summary judgment if crucial to create a triable issue of material fact. Indeed, to suggest a summary judgment motion could not be granted because experts had yet to be designated or deposed would render the entire summary judgment procedure meaningless, given a summary judgment motion must be filed no less than 105 days prior to trial and expert disclosure generally does not occur until 50 days before trial." (*Id*. at p. 1501, citing §§ 437c, subd. (a), 2034.230, subd. (b).)

Likewise, in this case, nothing has inhibited Plaintiffs from obtaining their own expert to provide declarations in support of their opposition. (*Knapp v. Doherty* (2004) 123 Cal.App.4th 76, 102 [stating that the opposing party's "lack of diligence . . . was an additional factor relevant to the court's exercise of discretion in its refusal to continue the summary judgment hearing"].) Rebecca's declaration does not indicate that Plaintiffs would depose experts of their own, obtain testimony from any other witnesses, or conduct any other meaningful discovery to contradict Defendants' experts' opinions. As

14

Plaintiffs failed to specifically identify the controverting facts they intended to reveal from the depositions of Defendants' experts or to explain why they have not hired their own expert to obtain these facts, the trial court had adequate grounds to deny the motion for continuance.

Since Plaintiffs failed to identify facts establishing a likelihood that controverting evidence may exist, failed to proffer expert evidence of their own, and exclusively seek to cross examine defense witnesses if afforded the continuance, the trial court did not abuse its discretion in denying Plaintiffs' request for a continuance.

## DISPOSITION

For the reasons stated above, we affirm the trial court's order granting Defendants' motion for summary judgment. Defendants the Regents of the University of California, Nova Foster, M.D., Victor Duval, M.D., Stephanie Berman, M.D., Yu Cheng-Wen, M.D., and Patricia Eshagain, M.D., are awarded their costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

KITCHING, J.

We concur:

KLEIN, P. J.

ALDRICH, J.

15