Filed 7/8/24  Purdom v. Xu CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR


| | |
|---|---|
| KENNETH PURDOM, | B327564 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 22STCV25633) |
| v. | |
| YING XU et al., | |
| Defendants and Appellants. | |


APPEAL from a judgment of the Superior Court of Los Angeles County, Daniel S. Murphy, Judge.  Affirmed.

Morris & Stone, Aaron P. Morris for Defendants and Appellants.

Law Offices of Thomas E. Rocket, III and Thomas E. Rocket, III for Plaintiff and Respondent.

## INTRODUCTION

This case involves a malicious prosecution lawsuit arising out of a medical malpractice action. In the underlying medical malpractice lawsuit, appellants Ying Xu, Law Offices of Eric K. Chen, Eric Chen, Samantha Larsen, and Kaleigh Ragon (collectively, the Attorneys) represented patient Ying Hong Zhang against respondent Kenneth Purdom, M.D. At the close of Zhang's evidence during the bench trial of the malpractice action, the trial court granted Purdom's motion for judgment.

Purdom then filed a malicious prosecution action against the Attorneys and Zhang,[1] arguing that their failure to retain an expert to support the medical malpractice claims demonstrated that the lawsuit was filed and pursued without probable cause and with malice. The Attorneys filed a special motion to strike the complaint under the anti-SLAPP statute, Code of Civil Procedure section 425.16.[2] The trial court denied the motion.

The parties do not dispute that the Attorneys met step one of the anti-SLAPP statute, as Purdom's malicious prosecution claim arises out of protected activity under section 425.16. But the Attorneys challenge the trial court's finding that, as to step two, Purdom had established a probability of prevailing on his malicious prosecution claims. The trial court found that because the Attorneys did not retain an expert to provide necessary testimony at trial as to several elements of Zhang's claims, Purdom met his burden to establish a prima facie case that the

---

[1]    Zhang is not a party to this appeal.

[2]    All further undesignated statutory references are to the Code of Civil Procedure. "SLAPP" stands for "strategic lawsuits against public participation." (*FilmOn.com Inc. v. DoubleVerify Inc.* (2019) 7 Cal.5th 133, 139.)

Attorneys brought or maintained the medical malpractice action without probable cause and with malice.  We agree that Purdom has met his step two burden on the merits of his claim.  We therefore affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

A.  **Underlying Litigation**

1.  *Medical malpractice complaint*

Zhang filed the underlying complaint in November 2018, alleging two causes of action for professional negligence and medical battery.  She alleged that on April 6, 2018, she was experiencing fever, chills, and pain in her abdomen. Zhang went to the emergency department at Whittier Hospital Medical Center.  The hospital performed a pelvic ultrasound and a CT scan of her abdomen and pelvis.  Zhang attached a copy of both reports to her complaint.  The ultrasound report, completed by Dr. Floyd Gardner at 2:55 p.m., stated that a "right ovarian mass is suspected."  The CT scan report, completed by Dr. Bay Ngo at 5:55 p.m., noted a gallstone in Zhang's gallbladder and "several low density lesions" in her liver.  It did not make any findings as to her ovaries.  Zhang alleged that the CT scan "revealed no ovarian cyst or any other abnormality in the right ovary."  Zhang further alleged, based on information and belief, that "diagnostic imaging studies for the same body parts that show inconsistent results require further analysis by medical professionals."

Zhang was admitted to the hospital around 7:44 p.m. on April 6, 2018.  Purdom was called in to consult, telling Zhang around midnight that she had an ovarian cyst and needed surgery to remove the cyst along with her right ovary.  When Zhang asked if she could have a less intrusive surgery to remove only the cyst, Purdom replied, "we cannot save your ovary."

3

Zhang signed an informed consent form for the surgery, an "open laparotomy right salpingo oophorectomy." However, she alleged that she did not consent to an "exploratory surgery to find out whether she actually had an ovarian cyst." Zhang alleged that Purdom never discussed the CT findings with her, did not perform a "manual or visual examination" of her, and did not discuss "the possibility of a false positive result of [Zhang's] ultrasound examination," before obtaining her consent.

The following day, Purdom performed Zhang's surgery, which revealed "a normal looking right ovary and no sign of a cyst." In support of her first cause of action for professional negligence, Zhang alleged that Purdom failed to "review or consider" her negative CT scan or her medical history and failed to examine her before diagnosing her with an ovarian cyst, and therefore breached his duty of care to Zhang. Purdom therefore "performed a needless surgery that was not medically indicated," causing harm to Zhang.

In her second cause of action for medical battery, Zhang alleged that Purdom "performed an exploratory laparotomy" on her that was "intended to find out whether she actually has [*sic*] any lesion in the ovary." Because she "only consented to an open laparotomy to remove an existent ovarian cyst," Zhang alleged that Purdom "performed a procedure that is substantially different" than the procedure to which she had consented.

### 2. *Pretrial proceedings*

In April 2020, Purdom served his designation of expert witnesses, identifying two retained expert witnesses to testify to the standard of care in the fields of gynecology and diagnostic radiology, causation, and damages. Zhang identified as non-retained expert witnesses 29 treating healthcare providers,

4

including Purdom and Dr. Elsie Wu, who was Zhang's gynecologist in 2018; she did not designate any retained expert witnesses.

On July 12, 2021, Purdom filed motions in limine numbers one and two to exclude Zhang from introducing expert witness testimony on her claims for professional negligence and medical battery, respectively. He argued that Zhang had failed to designate any retained experts and none of the non-retained experts on Zhang's expert list were qualified to opine on the relevant standard of care. Purdom's motions also cited case law supporting his contention that an expert witness was required to establish the elements of a professional negligence cause of action and related claims.

In opposition, Zhang argued that she had properly participated in the expert exchange and had designated multiple treating physicians who could "testify in the form of any opinion or otherwise." She also "reserved her right to call and examine Defendant's designated expert trial witnesses." She argued that non-retained experts could offer opinions based on "independently acquired" facts and stated that she had designated treating physicians and nurses who were qualified to "offer opinion testimonies regarding standard of care and causation of Plaintiff's injuries."

At a hearing on August 6, 2021, the court heard argument on the motions in limine.[3] Zhang again argued that she had non-

_____

[3] The parties waived the use of a court reporter for trial. Details from court proceedings on August 6, 9, and 10, 2021 are taken from the court's minute orders and summaries of the

5

retained experts who were qualified to offer opinions on the standard of care and causation of her injuries. The court stated that a treating physician could testify as an expert, without an expert declaration, as to "opinions formed on the basis of facts independently acquired and informed by his training, skill and experience," quoting *Schreiber v. Estate of Kiser* (1999) 22 Cal.4th 31, 39. However, to the extent a physician formed an opinion in anticipation of litigation or preparation for trial, "he or she acts as a retained expert." The court denied the motions in limine without prejudice to raising an objection during trial,[4] but added that, "[g]iven the facts thus far provided, it would not appear that the Plaintiff is qualified to opine on the standard of care."

### 3.  *Trial*

The parties agreed to proceed by bench trial. Trial began August 9, 2021, with Xu appearing as counsel for Zhang. At the conclusion of Zhang's opening statement, Purdom orally moved for nonsuit on the grounds that Zhang failed to present sufficient evidence to support her two causes of action. Zhang argued that she would present witnesses during her case-in-chief showing that Purdom breached the applicable standard of care and thereby caused Zhang harm. The court denied the motion.

---

proceedings submitted by Purdom. We granted the Attorneys' request for judicial notice of these documents, as well as their oppositions to the relevant motions in limine.

[4]     The court's minute order indicates that motion in limine number one, relating to expert testimony on the first cause of action for medical malpractice, was denied without prejudice. The record does not indicate whether motion in limine number two, regarding the second cause of action for medical battery, was denied with or without prejudice.

6

Zhang presented six witnesses in her case-in-chief on August 9 and 10, 2021.  Testifying through a Mandarin interpreter, Zhang stated that after the ultrasound on April 6, a female doctor told her she had a "fist-size tumor" and needed a CT scan.  Zhang had a CT scan but was not informed of the results.  After she was admitted to the hospital, Purdom came to her bedside and asked her to sign a consent to surgery.  He told Zhang that "we cannot save your ovary" and that the surgery would remove the ovary and fallopian tube, along with the tumor.  He communicated with Zhang in English.  According to Zhang, Purdom did not physically examine her or ask about her medical history.  After Purdom left, a nurse came to Zhang with an electronic consent form, which Zhang signed.

Zhang testified that after the surgery, a nurse told her that "there was no tumor."  She was relieved, but then became anxious and frustrated.  She also had intense pain from the surgical wound.  She continued to have pain and needed help performing daily activities for over a month.  She also experienced emotional distress as a result of the incident.  Zhang's husband, Simon Yang, also testified about Zhang's recovery and emotional distress.

Purdom testified that he performed a surgical consult of Zhang around 11:00 p.m. on April 6, 2018.  He recommended the surgery—an open laparotomy right salpingo oophorectomy—to remove Zhang's right ovary and fallopian tube.  Purdom testified that he recommended surgery based on his review of Zhang's lab results, the ultrasound report, prior provider notes, and a physical assessment of Zhang.  He could not recall whether he reviewed the CT scan prior to his consultation with Zhang, but testified that the CT scan report was not critical to his clinical

7

decision to recommend surgery and would not have altered his decision. Purdom also testified that he requested a nurse who spoke Chinese to be present when obtaining Zhang's consent to the surgery, but did not recall if that nurse was present when Zhang signed the consent form. There were no complications from the surgery.

Dr. Ngo, the radiologist who read Zhang's CT scan, testified that he did not review any prior imaging studies before interpreting the CT scan. He also stated that according to the hospital's electronic records system, Purdom did not access Zhang's CT scan prior to her surgery. Carole Higbee, nurse practitioner, testified that she reviewed Zhang's ultrasound, recommended admitting her to the hospital, and discussed the results of the CT scan with Zhang in English. Specifically, Higbee testified that she discussed with Zhang that the report stated that Zhang had a gallstone and several low-density lesions in her liver.

Dr. Wu testified that she was Zhang's gynecologist in 2018 and was aware of the incident involving Purdom. She stated that when seeking a patient's informed consent for surgery, she would evaluate all relevant medical evidence including diagnostic tests and disclose such information to the patient. Wu also testified that she was not retained to express an opinion on Purdom's diagnosis and treatment of Zhang, or opinions on the standard of care, causation, and damages.

After Zhang rested on August 10, Purdom orally moved for judgment pursuant to section 631.8. He argued that Zhang failed to present sufficient evidence at trial to support her causes of action. Specifically, he asserted that Zhang failed to present any expert opinion that Purdom breached the applicable standard of

8

care or that any such breach was a substantial factor in causing harm to Zhang.

Following oral argument from Zhang and the opportunity to present additional evidence,[5] the court granted the motion for judgment. With respect to the first cause of action for professional negligence, the court "acknowledged that Plaintiff did not designate any retained experts in this matter to opine on the issues of standard of care, causation, and damages. In viewing the light [*sic*] most favorable to the Plaintiff, had Dr. Purdom breached the applicable standard of care relative to his care and treatment of Plaintiff, Plaintiff did not provide any evidence to support a finding that the breach caused and/or contributed to Plaintiff's claimed injuries." The court also cited Purdom's testimony that the CT report would not have altered his clinical decision. Turning to Zhang's second cause of action, the court treated it as two separate claims for lack of informed consent and medical battery. With respect to Zhang's lack of informed consent claim, the court found that Zhang "gave informed consent to undergo the open laparotomy right side salpingo oophorectomy with Dr. Purdom. . . . Further Plaintiff did not set forth any qualified expert opinion to state that Dr. Purdom failed to obtain Plaintiff's informed consent for surgery and how the surgery [Purdom] performed exceeded the scope of the consent Plaintiff gave." The court also found that Zhang "failed to provide sufficient and qualified evidence to support a finding that her alleged injury was a complication that had she

---

[5]     There is no indication in the record that Zhang presented any additional evidence. Neither the summary of proceedings nor the judgment contains the details of Zhang's argument in opposition to the motion for judgment.

9

known about prior to surgery, she would not have given informed consent for the surgery." The court similarly concluded that Zhang failed to meet her burden as to medical battery, finding that Zhang gave informed consent to the surgery and Purdom did not exceed the scope of that consent. The court therefore granted the motion as to the entire action and ordered Purdom to prepare a proposed order and judgment.

The court entered judgment in favor of Purdom on August 30, 2021.

## B. Malicious Prosecution Action

### 1. *Complaint*

In 2022, Purdom filed a complaint alleging malicious prosecution against Zhang and the Attorneys.[6] He alleged that the Attorneys filed the malpractice action without probable cause because they knew or should have known that the case required an expert witness to establish the applicable standard of care, breach, and damages. Thus, they acted maliciously in proceeding to trial on the case despite knowing they could not establish the elements of the claims.

### 2. *Anti-SLAPP motion*

#### a. *Motion*

The Attorneys filed a special motion to strike Purdom's complaint under section 425.16, the anti-SLAPP statute. "Resolution of an anti-SLAPP motion involves two steps. First, the defendant must establish that the challenged claim arises

---

[6] The court ultimately sustained a demurrer by Zhang to Purdom's complaint without leave to amend. Zhang was not a party to the anti-SLAPP proceedings and we discuss her involvement in the malicious prosecution action only to the extent relevant to this appeal.

10

from activity protected by section 425.16. [Citation.] If the defendant makes the required showing, the burden shifts to the plaintiff to demonstrate the merit of the claim by establishing a probability of success." (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384 (*Baral*).) When "claims are stricken from the pleadings for lack of merit, [the plaintiff] may no longer seek to impose liability on defendants for having engaged in these protected acts." (*Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1019 (*Bonni*).)

Purdom did not dispute that his claim arose out of protected activity and therefore that the Attorneys met the first step of the anti-SLAPP analysis. (See *Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 735 ["It is settled that a claim for malicious prosecution is subject to a special motion to strike" under section 425.16].) Regarding the second step, the Attorneys argued that Purdom could not meet his burden of demonstrating a probability of success on the merits. Specifically, they argued that Purdom could not show that they lacked probable cause or acted with malice in filing the malpractice action against him. They acknowledged that "[a] medical malpractice plaintiff normally must offer expert testimony to establish the applicable standard of care, whether the standard was met or breached, and whether the negligence caused plaintiff's injuries," citing *Scott v. Rayhrer* (2010) 185 Cal.App.4th 1535, 1546 (*Scott*). But they argued that the case fell under an exception where "the negligence is a matter of common knowledge." Here, the Attorneys argued that Purdom's alleged failure to consider critical information, including a CT scan, resulted in misdiagnoses and unnecessary surgery, and that expert opinion was not necessary for the factfinder to determine that this

11

conduct breached the standard of care. The Attorneys also argued that the trial court's denial of Purdom's motion for nonsuit at the start of the malpractice trial was evidence that they had probable cause to bring and maintain the malpractice action.

The motion included a declaration from attorney Xu, detailing his discussions with Zhang prior to filing the malpractice action. According to Xu, Zhang told him that she believed Purdom did not review the CT scan prior to recommending surgery. Zhang also reported that she tried to tell Purdom she had recently had a normal examination by her gynecologist, Dr. Wu, but Purdom brushed her off. As a result, Xu stated that he was "of the firm opinion" that Purdom diagnosed Zhang and recommended surgery "on substantially less than a fully informed basis." Xu also relayed a conversation between Zhang and Wu, after Zhang told her about the surgery. According to Xu, Wu told Zhang that if Purdom had failed to review the CT scan prior to diagnosis and surgery, that would be reckless. Xu concluded that he "did not and do not think that an expert is needed to testify in order to establish that [Purdom] fell beneath the applicable standard of care, performed a substantially different procedure than what was consented to, and caused substantial harm thereby."

The Attorneys attached Zhang's consent to surgery as an exhibit to the motion. They also filed a request for judicial notice of the malpractice complaint, Purdom's answer, the summary of trial proceedings filed by Purdom, and the order granting the motion for judgment.

12

b.     *Opposition*

In his opposition to the special motion to strike, Purdom argued that he had a probability of prevailing on his malicious prosecution claim. He asserted that the Attorneys lacked probable cause to bring the malpractice lawsuit against Purdom because no reasonable attorney would have thought the claim was tenable without an expert on the standard of care or causation. Purdom objected to the statements attributed to Dr. Wu in Xu's declaration as hearsay and noted that Dr. Wu did not testify to this information at trial. He also argued that the Attorneys acted with malice, as they knew or should have known that expert witness testimony was necessary, but maintained the lawsuit through trial without such evidence.

c.     *Reply*

The Attorneys' reply asserted that their failure to present expert testimony did not establish a lack of probable cause. They also argued that they presented Wu as a non-retained expert "on the subjects of duty, breach and causation, as well as whether Plaintiff performed a substantially different surgery than consented to." In a supporting declaration, Xu stated that he spoke with Wu on the first day of trial, August 9, 2021 "regarding testifying in support of [Zhang's] case." Xu reiterated that he did not believe expert testimony was necessary, and the Attorneys had not retained an expert for trial "because it was cost prohibitive to do so." Nevertheless, "out of an abundance of caution," the Attorneys designated Wu as a non-retained expert and intended to call her to testify at trial regarding "duty, breach, causation, and the difference between the two procedures." However, when Xu began to examine Wu on these issues, Purdom's counsel objected that Wu was "not properly designated

13

as a retained or non-retained expert to testify" as to these issues. Xu stated that "[d]espite my offer of proof, the Trial Court sustained [Purdom's] objections, and Dr. Wu was not permitted to testify."

The Attorneys also filed objections to the evidence submitted in support of Purdom's opposition to the motion to strike. They objected to portions of the declaration of Purdom's attorney as improper expert opinion.

### d. *Hearing and ruling*

The court denied the Attorneys' motion in a written ruling on February 10, 2023. As an initial matter, the court granted the Attorneys' request for judicial notice and sustained their evidentiary objections.[7] The court agreed with the parties that the Attorneys had satisfied the first step of the anti-SLAPP analysis, demonstrating that Purdom's claim for malicious prosecution arose out of protected activity.

Proceeding to the second step, the court agreed with Purdom that "medical negligence and medical battery usually require retained expert witnesses," citing *Scott, supra,* 185 Cal.App.4th at p. 1546. The court further found that the failure to retain expert witnesses showed that the Attorneys lacked probable cause to bring the medical malpractice action to trial. The court cited the admission in Xu's declaration that he never retained an expert for the case. The court explained that Xu's declaration "sets forth facts surrounding patient Ying Zhang's treatment, but attorney Xu went to trial without any evidence that [Purdom] breached any standard of care in providing treatment to patient Zhang. The court finds that no reasonable

---

[7] It does not appear that the court ruled on Purdom's hearsay objection to statements in Xu's declaration.

14

attorney would have thought the action tenable without a medical expert to testify concerning the standard of care and causation." The court rejected the Attorneys' argument that this case fell within the exception to the expert requirement, stating, "Clearly, the underlying case was not a case where negligence would be obvious to a lay person."

The court also rejected the argument that the Attorneys intended to use Wu to testify as to "duty, breach, causation, and the difference between the two procedures." The court noted that in moving to strike, the Attorneys had "not provided any information as to what Dr. Wu's testimony would be. [The Attorneys] fail to provide any declaration from Dr. Wu, nor any offer of proof that Dr. Wu would testify that [Purdom's] actions fell below the standard of care." The court also found that the trial court in the medical malpractice case had granted judgment based on the finding that the Attorneys "did not have a factual or legal basis to assert a claim for battery or medical negligence," and therefore the court concluded that the "claims in the underlying action were untenable."

The court also found that Purdom had established a probability of prevailing on the malice element of his claim. The court reasoned that "as the attorneys for the patient, [the Attorneys] knew the issues raised in the underlying complaint were of a subject matter not readily understandable to the common knowledge of lay persons. From the time the lawsuit was filed on behalf of the patient, [the Attorneys] knew, or should have known, that expert witness support was necessary. [The Attorneys'] indifference to this fact continued through the conclusion of trial." The court accordingly denied the special motion to strike.

15

The Attorneys timely appealed the court's order.

**DISCUSSION**

This appeal challenges only the trial court's findings on the second step of the anti-SLAPP analysis, as the parties agree that the challenged claim arises from protected activity. As to the second step, the Attorneys contend the trial court erred in holding that Purdom had established a probability of prevailing on his malicious prosecution claim and denying their anti-SLAPP motion on that basis. They argue that their failure to produce expert testimony at trial in support of Zhang's medical malpractice claims does not equate to a lack of probable cause in filing or maintaining those claims. Alternatively, they assert that they planned to have Dr. Wu supply any necessary expert testimony, but that testimony was excluded upon objection by Purdom. Upon de novo review, we find no error in the court's holding that Purdom met his second-step burden regarding a probability of success.

**A. Legal standards**

Under section 425.16, "[a] cause of action arising from a person's act in furtherance of the 'right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability' that the claim will prevail." (*Monster Energy Co. v. Schechter* (2019) 7 Cal.5th 781, 788 (*Monster Energy*), citing § 425.16, subd. (b)(1).) As such, the anti-SLAPP statute "provides a procedure for weeding out, at an early stage, *meritless* claims arising from protected activity." (*Baral, supra,* 1 Cal.5th at p. 384.)

16

In the second step of the analysis, "'the burden shifts to the plaintiff to demonstrate the merit of the claim by establishing a probability of success. We have described this second step as a "summary-judgment-like procedure." [Citation.] The court does not weigh evidence or resolve conflicting factual claims. Its inquiry is limited to whether the plaintiff has stated a legally sufficient claim and made a prima facie factual showing sufficient to sustain a favorable judgment. It accepts the plaintiff's evidence as true, and evaluates the defendant's showing only to determine if it defeats the plaintiff's claim as a matter of law. [Citation.] "[C]laims with the requisite minimal merit may proceed."'" (*Monster Energy, supra*, 7 Cal.5th at p. 788, quoting *Baral, supra*, 1 Cal.5th at pp. 384-385, fn. omitted.)

"We review de novo the grant or denial of an anti-SLAPP motion." (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1067 (*Park*).). For the second step, "a plaintiff seeking to demonstrate the merit of the claim 'may not rely solely on its complaint, even if verified; instead, its proof must be made upon competent admissible evidence.'" (*Monster Energy, supra*, 7 Cal.5th at p. 788, quoting *San Diegans for Open Government v. San Diego State University Research Foundation* (2017) 13 Cal.App.5th 76, 95.)

**B.  Analysis**

The issue on appeal is whether Purdom established a probability of prevailing on his malicious prosecution claim. That claim, in turn, requires the plaintiff to prove "'that the prior action (1) was commenced by or at the direction of the defendant and was pursued to a legal termination in his, plaintiff's, favor; (2) was brought without probable cause; and (3) was initiated with malice.'" (*Zamos v. Stroud* (2004) 32 Cal.4th 958, 965,

citations and italics omitted.)  An attorney will also be held liable for malicious prosecution "for continuing to prosecute a lawsuit discovered to lack probable cause."  (*Id*. at p. 970.)

The Attorneys contend that Purdom failed to establish the second and third elements of his malicious prosecution claim, a lack of probable cause and malice.  We examine each in the context of the two claims alleged in Zhang's underlying complaint.

### 1. *Zhang's medical malpractice claim*

#### a. *Probable cause*

"[T]he probable cause element calls on the trial court to make an objective determination of the 'reasonableness' of the defendant's conduct, i.e., to determine whether, on the basis of the facts known to the defendant, the institution of the prior action was legally tenable."  (*Sheldon Appel Co. v. Albert & Oliker* (1989) 47 Cal.3d 863, 878 (*Sheldon Appel*).)  The test to determine whether a claim is tenable is an objective one, asking "whether any reasonable attorney would have thought the claim tenable."  (*Id*. at p. 886.)

Purdom alleged that the Attorneys lacked probable cause to bring and/or maintain Zhang's claim for medical malpractice, a type of professional negligence.  The plaintiff in a medical malpractice claim must establish: "(1) the duty of the professional to use such skill, prudence, and diligence as other members of his profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional's negligence."  (*Hanson v. Grode* (1999) 76 Cal.App.4th 601, 606; see also *Landeros v. Flood* (1976) 17 Cal.3d 399, 408 ["a physician is required to possess and

18

exercise, in both diagnosis and treatment, that reasonable degree of knowledge and skill which is ordinarily possessed and exercised by other members of his profession in similar circumstances"].)

It is a longstanding rule that the testimony of an expert witness is required in a professional negligence case to establish the applicable standard of care, whether that standard was met or breached by the defendant, and whether any negligence by the defendant caused the plaintiff's damages. (See *Scott, supra*, 185 Cal.App.4th at p. 1542, citing *Flowers v. Torrance Memorial Hospital Medical Center* (1994) 8 Cal.4th 992, 1001 (*Flowers*); accord, *Landeros v. Flood, supra*, 17 Cal.3d at p. 410 ["[t]he standard of care against which the acts of a physician are to be measured is a matter peculiarly within the knowledge of experts"].) Thus, "expert testimony is required to 'prove or disprove that the defendant performed in accordance with the standard prevailing of care' unless the negligence is obvious to a layperson." (*Johnson v. Superior Court* (2006) 143 Cal.App.4th 297, 305; see also *Sanchez v. Kern Emergency Medical Transportation Corp*. (2017) 8 Cal.App.5th 146, 153 ["'Whenever the plaintiff claims negligence in the medical context, the plaintiff must present evidence from an expert that the defendant breached his or her duty to the plaintiff and that the breach caused the injury to the plaintiff.'"]; *Dumas v. Cooney* (1991) 235 Cal.App.3d 1593, 1603 ["'[c]ausation must be proven within a reasonable medical probability based upon competent expert testimony.'"].)

The Attorneys introduced no expert testimony in Zhang's case-in-chief to establish the requisite elements of her professional negligence claim. Indeed, Xu acknowledged that he

19

intentionally did not retain an expert because it was too expensive and because he did not think it was necessary. Without expert testimony on the standard of care, breach, and causation, Zhang's claim was not legally tenable. It was therefore objectively unreasonable for the Attorneys to bring the medical malpractice claim, and to maintain that claim through trial, without the necessary expert support.

The Attorneys acknowledge the general rule requiring expert testimony, but contend that this case falls within an exception, or at least they had probable cause to believe it could. That narrow exception exists where "the conduct required by the particular circumstances is within the common knowledge of the layman." (*Flowers, supra*, 8 Cal.4th at p. 1001.) This exception, however, is "principally limited to situations in which the plaintiff can invoke the doctrine of res ipsa loquitur, i.e., when a layperson 'is able to say as a matter of common knowledge and observation that the consequences of professional treatment were not such as ordinarily would have followed if due care had been exercised.' The classic example, of course, is the X-ray revealing a scalpel left in the patient's body following surgery. Otherwise, '"expert evidence is conclusive and cannot be disregarded."'" (*Ibid.*; see also *Gannon v. Elliot* (1993) 19 Cal.App.4th 1, 6–7 [collecting cases applying the exception where a foreign object is left in a patient's body during surgery].)

We are not persuaded by the Attorneys' contention that this exception so clearly applied to Zhang's malpractice action that it defeats Purdom's claims as a matter of law. Unlike cases in which a foreign object is left in a patient after surgery, Zhang alleged an entirely different manner of negligence—that Purdom based his diagnosis on a consideration of some, but not all, of her

medical records and history. We find no support in the "foreign object" case law for the Attorneys' suggestion that it is "common knowledge" to a layperson which data a surgeon should consider in a specific medical circumstance. Expanding the exception in such a manner would go well beyond its current "limited" scope. (See *Flowers, supra,* 8 Cal.4th at p. 1001.) Tellingly, the Attorneys cite no authority under analogous facts. (See *Ales v. Ryan* (1936) 8 Cal.2d 82, 95 [sponge left in patient's body during operation]; *Elcome v. Chin* (2003) 110 Cal.App.4th 310, 318 [rejecting the plaintiff's argument that it was "within common knowledge that a person should not develop injury to their neck . . . as a result of an operation focused in the pelvic area" because "[t]his is not a case where a foreign object was left in plaintiff's body following an operation, for which there is *no explanation* other than that someone failed to exercise due care"]; see also *Scott, supra*, 185 Cal.App.4th at p. 1543 [requiring expert testimony to establish negligence].) Moreover, because the probable cause question is objective, Xu's subjective statements that he believed no expert was required are irrelevant to this analysis. ( See *Downey Venture v. LMI Ins. Co.* (1998) 66 Cal.App.4th 478, 496 ["The subjective beliefs of the defendant attorney as to legal tenability of the action are not relevant to the question of probable cause."].)

We also reject the Attorneys' contention that no expert was needed to establish causation because any "unnecessary" surgery causes harm. That the surgery was unnecessary in hindsight does not amount to a pre-surgery breach of the standard of care. Zhang did not present evidence of a breach at trial, and therefore did not establish that Purdom caused any injury. In fact, the only evidence at trial regarding causation was Purdom's

21

testimony that the CT scan would *not* have changed his diagnosis or recommendation. We therefore conclude that Purdom has demonstrated a prima facie case that no reasonable attorney would believe that Zhang's claims could proceed without expert support.

Assuming expert testimony was required, the Attorneys also assert several alternative arguments. First, they contend that they were prepared to produce the requisite testimony at trial through Dr. Wu, but it was barred by Purdom's objections. They do not assert that the trial court's order sustaining these objections was error. Purdom presented evidence showing that Wu was not prepared to provide the requisite expert testimony and in fact testified at trial that she was not retained to form an opinion as to the standard of care, breach, or damages. Nevertheless, the Attorneys proceeded through trial without the necessary support for Zhang's claims. The Attorneys contend that "Dr. Wu was prepared to opine on the Issues at trial in support of the Patient's case, including that Respondent breached the duty of care, resulting in an unnecessary surgery." But they offer no evidence to support this assertion and to rebut Purdom's showing. Indeed, none of the Attorneys' citations to the record support their claim that Wu intended to testify as to the standard of care or that Purdom breached it. Although Xu claimed he made an offer of proof as to Wu's testimony, the record does not establish what that offer contained and the Attorneys have never provided any declaration from Wu. In any event, we need not resolve any conflict in the evidence, because the Attorneys' contentions do not defeat Purdom's claims as a matter of law. Purdom's showing was therefore sufficient to meet his step two burden.

22

Second, the Attorneys claim that in order to demonstrate a probability of prevailing, Purdom was required to show that "no expert would conclude [Purdom] breached the duty of care." In other words, they argue that to establish that Zhang's claim was without merit, Purdom had to show that no expert in the field would have been willing to testify that Purdom breached his duty or caused Zhang's injury. The Attorneys do not cite any authority to support this novel standard, nor do they explain how a plaintiff could possibly meet it. Instead, they rely on *Area 55, LLC v. Nicholas & Tomasevic, LLP* (2021) 61 Cal.App.5th 136, which does not stand for this proposition. Instead, that case simply quotes the rule that "[o]nly those actions that any reasonable attorney would agree are totally and completely without merit may form the basis for a malicious prosecution suit." (*Id*. at p. 165, quoting *Zamos, supra*, 32 Cal.4th at p. 970.) Purdom met his evidentiary burden on the second step of the anti-SLAPP analysis by producing the evidence discussed herein, including that the Attorneys failed to retain any experts and failed to present evidence at trial to support Zhang's claims.

The Attorneys also argue that focusing on their failure to retain experts improperly shifts the probable cause inquiry from the "objective tenability of the prior claim to the adequacy of the particular defendant's performance as an attorney." (S*heldon Appel, supra*, 47 Cal.3d at p. 883.) The discussion in *Sheldon Appel* is inapposite. There, the court was discussing the rule that the extent of an attorney's research and investigation into a claim is irrelevant to the objective standard in a probable cause analysis. (*Ibid*.) Here, the issue is not whether the Attorneys made a misjudgment in deciding whether to retain an expert. Rather, in circumstances where an expert is required to establish

23

elements of a claim, the analysis turns on whether a reasonable attorney would pursue that claim without that expert evidence.

Finally, the Attorneys contend that the court's denial of Purdom's motion for nonsuit at the start of trial establishes that they had probable cause to bring these claims. In *Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 824, our Supreme Court held, "[d]enial of a defense summary judgment motion on grounds that a triable issue exists, or of a nonsuit, while falling short of a determination of the merits, establishes that the plaintiff has substantiated, or can substantiate, the elements of his or her cause of action with evidence that, if believed, would justify a favorable verdict." (See also *Roberts v. Sentry Life Insurance* (1999) 76 Cal.App.4th 375, 384 ["denial of defendant's summary judgment in an earlier case normally establishes there was probable cause to sue, thus barring a later malicious prosecution suit"].) This rule does not conclusively apply, however, as "there may be situations where denial of summary judgment should not irrefutably establish probable cause," such as where denial of summary judgment "was induced by materially false facts submitted in opposition." (*Roberts v. Sentry Life Insurance, supra,* 76 Cal.App.4th at p. 384.) Here, reviewing the limited record before us, the court denied nonsuit based on the Attorneys' representations that they would be introducing witnesses in their case-in-chief to testify that Purdom breached the applicable standard of care and thereby caused harm to Zhang. Contrary to these representations, the Attorneys did not introduce any evidence on these issues at trial, nor is there any evidence in the record that they had such evidence. Under these circumstances, we do not find that the court's denial of nonsuit established probable cause.

24

Thus, Purdom has established a prima facie case that the Attorneys acted without probable cause in bringing and maintaining the professional negligence claim against him.

        b.     *Malice*

Purdom must also make a prima facie showing that the Attorneys acted with malice in bringing or maintaining Zhang's negligence claim. "The 'malice' element of the malicious prosecution tort relates to the subjective intent or purpose with which the defendant acted in initiating the prior action" (*Sheldon Appel, supra,* 47 Cal.3d at p. 874.) "Malice does not require that the defendants harbor actual ill will toward the plaintiff in the malicious prosecution case, and liability attaches to attitudes that range 'from open hostility to indifference.'" (*Cole v. Patricia A. Meyer & Associates, APC* (2012) 206 Cal.App.4th 1095, 1114, quoting *Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 292.)

Malice may be inferred from circumstantial evidence, such as a lack of probable cause, supplemented with proof that the prior case was instituted largely for an improper purpose. (*Daniels v. Robbins* (2010) 182 Cal.App.4th 204, 225.) This additional proof may consist of evidence that the prior case was knowingly brought without probable cause or was brought to force a settlement unrelated to its merits. (*Id.* at pp. 226, 228; see also *HMS Capital, Inc. v. Lawyers Title Co.* (2004) 118 Cal.App.4th 204, 218.)

Purdom contends that he has presented sufficient evidence to make a prima facie showing that the Attorneys maintained the medical malpractice action through trial knowingly without probable cause. We agree. As discussed above, the Attorneys brought and maintained Zhang's malpractice claim without

25

probable cause. They told the trial court alternately that they decided not to retain an expert because of the cost, that they did not believe expert testimony was necessary, and that they had non-retained experts who would testify as to the elements of medical malpractice. A month before trial, when Purdom filed his motions in limine, the Attorneys knew that he would object to and seek to exclude expert testimony by non-retained experts. Three days before trial, on August 6, 2021, the Attorneys reiterated that they had non-retained expert witnesses who would testify as to the standard of care. The court made clear that it would allow non-retained experts to testify only as to opinions based on information acquired independently of the litigation, citing *Schreiber, supra,* 22 Cal.4th at p. 39. Despite this directive and the case law supporting it, the Attorneys continued to insist that they would present expert witness testimony. On the first day of trial, August 9, 2021, Xu spoke to Wu regarding her testimony. There is no evidence that any of the Attorneys had spoken directly with Wu prior to this time. As previously discussed, Wu did not testify as to the standard of care, breach, or causation, nor have the Attorneys presented any evidence that she intended to do so. Similarly, despite the Attorneys' repeated assurances, there is nothing in the record indicating that Wu had any independently acquired knowledge that would have allowed her to give the requisite opinions as a non-retained expert. Indeed, in their opening brief, the Attorneys state that the court "limited Dr. Wu's testimony to opinions formed on facts acquired independently of the litigation."

The scope of permissible testimony by a non-retained expert was not a surprise at the time of trial. At that point, the Attorneys knew they could only present Wu's opinions if she

reached them based on independently acquired facts.  However, they proceeded through the trial without supporting testimony from Wu and without any other expert.

Taken together and viewed in the light most favorable to Purdom, we conclude that he has established a prima facie showing that the Attorneys acted with malice in maintaining the malpractice claim through trial despite knowing that they did not have the necessary evidence to prove that claim.  (See *Swat–Fame, Inc. v. Goldstein* (2002) 101 Cal.App.4th 613, 634 ["While after *Sheldon Appel* a lack of probable cause, standing alone, does not support an inference of malice, malice may still be inferred when a party knowingly brings an action without probable cause"], overruled on other grounds in *Zamos, supra*, 32 Cal.4th at p. 973; see also *Daniels v. Robbins, supra*, 182 Cal.App.4th at p. 226 [holding that "malice can be inferred when a party continues to prosecute an action after becoming aware that the action lacks probable cause"].)  Although Xu contends he believed otherwise, we do not weigh the evidence at this stage.  Thus, Purdom has sufficiently met his burden on the second step of the anti-SLAPP motion for Zhang's claim for professional negligence.

### 2. *Zhang's medical battery claim*

Although Zhang alleged a single cause of action for medical battery, the trial court treated it as two claims, one alleging a lack of informed consent and one alleging a battery because the scope of the procedure performed by Purdom exceeded the scope of Zhang's consent.  "A claim based on lack of informed consent— which sounds in negligence—arises when the doctor performs a procedure without first adequately disclosing the risks and alternatives.  In contrast, a battery is an intentional tort that occurs when a doctor performs a procedure without obtaining any

27

consent." (*Saxena v. Goffney* (2008) 159 Cal.App.4th 316, 324, citing *Conte v. Girard Orthopaedic Surgeons Medical Group, Inc.* (2003) 107 Cal.App.4th 1260, 1266.)

Both of Zhang's claims turned on the allegation that the procedure Purdom performed, which the Attorneys called an "exploratory laparotomy," was substantially different than the one he obtained Zhang's consent to perform, an "open laparotomy right salpingo oophorectomy."[8] The Attorneys contend that expert witness testimony was not necessary regarding the differences between these surgeries, because "in today's modern world vast amounts of reliable information is accessible by anyone from the palm of their hand." The suggestion that the factfinder at trial could or should use a smartphone to do independent research into medical terms is nonsensical and unprofessional. Such outside research would violate the factfinder's obligation to consider only the evidence presented in court. Moreover, the suggestion that these medical terms required research discredits the Attorneys' argument that this information is common lay knowledge. In the underlying action the Attorneys did not present any evidence, expert or otherwise, as to the difference between the procedures and whether it was substantial. The Attorneys' showing therefore does not defeat Purdom's claim as a matter of law.

We therefore conclude that Purdom has met his burden of showing his malicious prosecution claim has "minimal merit"

---

[8] The Attorneys repeatedly note that Purdom spoke with Zhang in English although her preferred language was Mandarin. However, in the underlying action Zhang neither alleged nor proved that she did not understand the consent discussion or form based on a language difficulty.

sufficient to defeat an anti-SLAPP motion.  (*Oasis West* (2011) *51* Cal.4th 811, 825.)

## DISPOSITION

The ruling denying the special motion to strike is affirmed. Purdom is entitled to recover his costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


COLLINS, ACTING P. J.

We concur:


MORI, J.


ZUKIN, J.